JAMES LANIER AND BENJAMIN C. WEST, APPELLANTS, *vs.* ELIZABETH CHAPPELL, AN INFANT, BY HER NEXT FRIEND, THOMAS MONROE, APPELLEE.

Where there was a contract to pay money to one, as guardian, by a company of which he was at the time a member, this was not such an union of the characters of debtor and creditor in the same person as to extinguish the debt—it merely suspended the remedy as to the guardian ; though, in such case, the infant's remedy is not suspended, but he may sue by his *prochein amie.*

An infant, by her *prochein amie,* brought an action of *indebitatus assumpsit* for the work and labor of slaves.   A note had ·been given to her guardian for the hire of the slaves, and the contract as to the time of the hire and labor was closed and executed.   Held, notwithstanding the *written* contract, that this form of action would lie.

Replication of *infancy* to a plea of the statute of limitations is good ; and a rejoinder thereto that the infant had a guardian at the time the action accrued and long after, was held to be bad on demurrer.

Appeal from Gadsden Circuit Court.

The case was this : An action of *assumpsit* was brought by Elizabeth Chappell, a minor, by her next friend, Thomas Monroe, for the hire of certain slaves belonging to the estate of the said minor.— The declaration contained but one count in "*indebitatus assumpsit*'

for the work and labor of the said slaves. To this count the defendants who were sued as the surviving partners of a firm doing business under the name of the "Quincy Steam Saw Mill Company," pleaded—1. *Non assumpsit*. 2. Payment. 3. That defendants had delivered their promissory note in full satisfaction of the plaintiff's demand. 4. The statute of limitations.

On the plea of *non assumpsit* issue was joined by plaintiff. To the plea of payment plaintiff replied a denial, and issue was taken thereon.

To the plea of satisfaction by the delivery of defendant's promissory note, the plaintiff replied specially that the note fell due before the commencement of this action and never was paid, and that plaintiff was the legal holder thereof at that time. Upon which allegations issue was joined.

To the plea of the statute of limitations plaintiff replied "infancy." To this last replication defendants rejoined that plaintiff had a guardian. And to this rejoinder plaintiff demurred. The demurrer was sustained by the Court and the defendants compelled to take issue.

Defendant's counsel prayed the Court to instruct the jury "That, if they believed from the evidence that the contract upon which this suit was brought was made by Lanier as the lawful guardian of Elizabeth Chappell, with the Quincy Steam Saw Mill Company, of which he was at the time a member, that the right to receive and the duty to pay united in the same person, and the debt became thereby extinguished."

The Court refused to give the instruction and the jury found for the plaintiff.

The counsel for appellants assign the following errors :

1. The Court erred in sustaining the demurrer to the rejoinder to the replication of "infancy."

2. In refusing to give the instruction asked by the defendants below.

*Carmack, Stephens & Baker*, for Appellants :

The record in this case presents the following questions.

1. Can this suit under the proof be maintained in the name of Elizabeth Chappell by her next friend, Thomas Monroe ?

Elizabeth Chappell appears to be an infant, and the question occurs whether the contract upon which this suit is brought was made *with her ?*

The proof in the cause shows that the only contract made was with Lanier, the former guardian of Elizabeth Chappell. If this be so, it follows that no other person than Lanier can sue upon the contract. If Lanier declines to sue, then the present guardian may sue in the name of Lanier for the use of the present guardian. The case of Moseley, Ex'r, &c. *v.* Williams, Florida Reports, 304, is in point.

2. No contract was made with the *plaintiff.* The contract was made by all of the defendants *with Lanier,* at that time guardian of Elizabeth Chappell, the plaintiff. He had the legal right to hire out the property of his ward, and to make such contract for that purpose as he chose. The right of the guardian must be exclusive.— If the ward may repudiate the contract thus made by the guardian for her benefit, then she can only elect to charge the guardian on his official bond with the true value of the hire.

The ward cannot repudiate the contract made, and set up another and different contract never made in fact. The defendants clearly made but one contract, and that was *in writing* with Lanier. The guardian and the other defendants cannot be bound by *another.*

They are bound by the real contract made, and the same can be enforced in a court of equity, if not in a court of law. This Court cannot make contracts for parties, and therefore cannot treat as a nullity the contract made with the guardian and *imply* a contract made with a different person.

3. The Court erred in sustaining the demurrer to the rejoinder.— The replication is " infancy." The rejoinder states that the infant, at the time the contract upon which suit is brought became due, had a lawful guardian, capable of suing upon the contract.

The replication is bad, because the action of *assumpsit* is not included in the saving clause of the statute of limitations in favor of infants. Thompson's Dig., 443, part 2.

4. The Court erred in refusing to give the instructions asked for by defendants' attorneys.

*Dupont* and *Thompson* for Appellee :

The only point raised by the instruction prayed in the bill of exceptions is that " where the right to receive and the duty to pay unite in the same person, the debt becomes thereby extinguished," &c.— Whether the doctrine contended for in the prayer be true or not, it

is not material to enquire in this place. It will be sufficient for us to show that it is not applicable to the circumstances of this case, as developed by the evidence.

The evidence proves that James Lanier, one of the defendants, as guardian of the plaintiff, hired to the firm of which he was a member the negro slaves, compensation for whose services it is the object of this suit to recover. Now the doctrine above contended for will be found to be inapplicable in this, that " the duty to pay" was incurred by *the copartnership firm* of which James Lanier was a member, and not by him in his individual character. Indeed, he never took upon himself, in his individual character, " the duty to pay," nor could he have been made *liable* " to pay," but in virtue of his character *as a copartner* of the Quincy Steam Saw Mill Company. As to the "right to receive," this was also in his special and qualified character as guardian ; and the duration of this " right to receive" was cotemporaneous only with the existence of his office as guardian. It is perfectly manifest, then, that the James Lanier who had incurred " the duty to pay," was a different *character* from the James Lanier whose right it was to receive this demand. If the doctrine contended for by the appellants be at all applicable to this case, it is so only to the extent of the " *remedy*" as presenting a *technical difficulty* in the maintainance of an action at law upon this demand by *James Lanier;* but certainly it does not operate to the extent contended for in the instruction prayed, to wit : to " the extinguishment of the debt."— Vide Bradford *v*. Williams, 4 Howard S. C. R., 587.

But supposing that, according to the technicality of legal proceedings, James Lanier in his *two characters* be considered as *one and the same person*, then we contend that " the right to receive" must be considered with reference to the date of the legal demand, *to wit* :— the *time of the institution of the suit ;* at which period it is very evident from the testimony that James Lanier had no " right to receive" this demand, he having been previously dismissed from the guardianship of the plaintiff. Vide Richards *v*. Richards, 22 Eng. Comm. Law Rep., 119.

That the doctrine contended for is laid down too broadly in the instruction prayed will be made manifest by adverting to the very common case of a firm executing its note payable to one of its own members, or the stronger and not infrequent case of an *individual* drawing a note payable to *himself*. In these instances, it is true,

that the technical difficulty of maintaining an action at law exists so long as "the right to receive" and "the duty to pay" unite in the same person ; and to this extent the "*remedy*" is affected. But it will not be seriously contended, that in the former case "*the debt was extinguished,*" or in the latter that the note was absolutely "*void ;*"— the utmost that can be contended for in these instances is that the debts are *inchoate*, and only requiring *an assignment* to impart to them full life and vigor.

In the instances just cited no action at law could be maintained so long as "the right to receive payment" remained in the payees of the note ; but the moment that "the right to receive," passed out of the payees by assignment, and vested in a third party, the *technical difficulty* is removed and the action is maintainable ; which conclusively demonstrates the correctness of our position that it is the *remedy* only, and not the *debt*, which is affected by the union of the character of creditor and debtor in the same person. Vide Chitty on Bills, 52. Ibid., 27, note b. 5 Cowen R., 711. 22 English Common Law Reports, 119.

The reasoning in the foregoing cases is much stronger when applied to the circumstances of the case at bar. It may be true that so long as James Lanier, one of the firm of the Quincy Steam Saw Mill Company, retained his office as guardian, *he* could not avail himself of the *legal remedy* to enforce the payment of this demand in favour of his ward, but the moment that his character as *creditor* was terminated by his dismissal from the guardianship, " the right to receive" vested in some other person and the technical difficulty was immediately removed. In order to show the strength of the argument as applied to the circumstances of this case, we contend that " the right to receive," or in other words the *remedy* was not *exclusively* with the guardian—the infant ward might, by leave of the Court, have sued for this demand by "*prochien amie,*" notwithstanding the existence of the guardianship ; and we venture nothing in asserting that the Court will never hesitate to grant its concurrence for the protection of the rights of the ward, whenever it is made to appear that the guardian is derelict of his duty. 4 Iredell Eq., 117, 121. Vide 1 Black. Com. 386, margin 465. Thompson's Digest, page 326, paragraph 5.

It will be noted, in this connection, that this suit was prosecuted by "*prochein amie,*" and that the plaintiff counted upon the *original*

*consideration,* and not upon the promissory note which was given to secure the payment for the hire of the slaves. The promissory note was introduced in evidence for two purposes, to wit : 1. to establish the value of the services of the slaves ; and 2. to sustain the replication that the note was still *unpaid* and in the possession of the plaintiff. Vide Chitty on Con., 593 to 599 and notes.

The propositions deducible from the foregoing argument and upon which we rely for an affirmance of the judgment are as follows :

I.—That the union of debtor and creditor in the same person, will operate an extinguishment of the debt *only* when that union has been effected *by the act of the original parties to the contract ;* but that when that union is produced by *operation of law,* it does not *extinguish the debt,* but only *suspends the remedy* for the time being.— 2 Williams on Ex'rs, 940. 1 Salk. R., 306—Wankford *v.* Wankford, by Holt, C. J.

II.—That in case of a guardian becoming a debtor to the estate of his ward, not even the *remedy is suspended,* for the minor may sue by "*prochein amie,*" notwithstanding the existence of the guardianship. 1 Black. Com., 386, margin 465. Thompson's Digest, 326, paragraph 5.

But should the Court be against us on these propositions, then we assume,

III.—That the point of law embraced in the instruction prayed and refused was not raised under any issue made by the pleadings, and, as an abstract or hypothetical question, the judge was not required to declare the law in reference thereto.

1. The point was not raised by the pleadings. Vide, Rules of Practice for the Circuit Courts, page 10 par. 3.

2. As a hypothetical question the judge was not required to declare the law in reference thereto. 1 Cranch, S. C. Reps., 309—Hamilton *v.* Russell.

From the nature of the evidence incorporated in the bill of exceptions, it is anticipated that an effort may be made to relieve the defendants from the obligations resulting from the general law governing " copartnerships," by an attempt to distinguish the company of which these defendants were members, from an ordinary trading company. Should this effort be made we then assume the following positions, viz :

1. That the " Quincy Steam Saw Mill Company" was a *trading*

company within the limits of its ostensible objects, to wit: the sawing and vending of lumber. Vide Collier on Part., 657, citing 1 Swanst. 495—Crawshay v. Maule. Ibid., 518. 1 Jac. & Walk., 298—Jeffreys v. Smith.

In the authority above cited a mining company was held to come within the definition of a trading association, and we can perceive no good reason why the same character may not attach to a steam saw mill company.

2. That as to the power of each member of the company to bind the company by contracts, (even should this association be viewed as a joint stock company) the general law of partnership must prevail, there being in this case no deed of settlement, limiting the authority of the individual members of the company. Collier on Partnership, 645, 652, 661.

3. As to the power of an individual partner to bind the firm, the general rule is, "that the act or agreement of one partner, with reference to and in the course of the partnership business and affairs, and the management thereof, is, in point of law, the act or contract of the whole firm and binding on them, although it violate some private agreement between the parties." Chitty on Contracts, 200, 201. 4 Cowen Rep., 282—Reynolds v. Cleveland.

In the case at bar the subject of contract was the hiring of laborers to carry on and conduct the ostensible business of the company.

As to the saving in the statute of limitations see 15 Viner Abr., 104.

HAWKINS, Justice, delivered the opinion of the Court:

Elizabeth Chappell, an infant, &c., brought an action of indebitatus assumpsit in the Court below, against James Lanier and Benjamin C. West, the appellants. The declaration charges them as surviving partners of a concern, trading and doing business under the name, style and firm of the Quincy Steam Saw Mill Company, for the work and labor of the servants and slaves of the plaintiff done, performed and bestowed by them in and about the business of the defendants, at their special instance and request. The following note was attached to the declaration:

"On the first day of January next, we promise to pay James Lanier, guardian of Elizabeth Chappell, minor heir of Benjamin Chap-

30

pell, deceased, three hundred and thirty-five dollars, for the hire of two negro boys, named Edward and Henry.

JAMES LANIER,

*Treasurer Steam Saw Mill Company.*

January 1, 1841.

To this declaration, the defendants in the Court below pleaded— 1. Payment. 2. That they delivered the plaintiff, before the com- mencement of the action, a promissory note for the amount sued for, signed by James Lanier, Treasurer Steam Saw Mill Company, and payable to James Lanier, guardian of Elizabeth Chappell, and that the same was taken in full satisfaction and discharge of the several promises in the declaration mentioned, and of all damages by the plaintiff sustained, by reason of the non-performance of the same, and was accepted of and from the defendants in full satisfaction and discharge of the promises and damages.

3. The statute of limitations.

To the first plea, the plaintiff replied non-payment, and tender of issue.

To the second plea, that the note at the time of the commence- ment of the action was and still is wholly due and unpaid, and that plaintiff is the holder thereof.

To the third plea, of the statute of limitations, the plaintiff replies *infancy.*

In the consideration of the case, we will, in the first place, notice the instruction asked for by the appellants, and refused by the Court below, to wit : " That, if the jury shall believe from the evidence, that the contract upon which this suit is brought was made by James Lanier, as the lawful guardian of Elizabeth Chappell, with the Quin- cy Steam Saw Mill Company, of which he was at the time a mem- ber—that the right to receive and the duty to pay united in the same person, and the debt became thereby extinguished."

We cannot think that the Court erred in declining to give this in- struction. In such a case, we do not regard the debt extinguished, but merely the remedy, so far as respects the guardian, suspended. Of course, as long as the fiduciary character of Lanier existed, an action could not be brought upon the note, for the reasons assigned by the counsel for the appellee ; but to say that the debt itself be- came extinguished, owing to this temporary and fortuitous union of

payee and promissor, would be, we think, as little in consonance with justice as the rules of law.

As soon as Lanier ceased to be the guardian of Elizabeth Chappell, this peculiar character of Lanier, to wit, the right to receive and the duty to pay, underwent a radical change, and the duty to pay only remained. The books draw a clear and visible distinction between the acts of a *party* and the acts of *law.* For instance, where the debtor was appointed executor—this at common law was deemed a suspension of the remedy by the *voluntary act of the creditor*, and, therefore, the action was gone, but the effect was different, where the remedy was suspended by the *act of the law.* " Thus, if administration of the effects of a creditor be committed to the debtor, this, being by act of law, is only a temporary privation of the remedy.— Therefore, if the obligor of a bond takes out administration to the obligee, and dies, the *administrator de bonis non* of the obligee may maintain an action for such debt against the executor of the obligor." 2 Williams on Executors, 940. So, in the Commentaries on Equity, vol. 2, page 454, Judge Story remarks : " At law, a testator, by the appointment of his debtor to be his executor, extinguishes his debt, and it cannot be revived ; although a debt due by an administrator would only be suspended. The reason of the difference is, that the one is the act of the law, and the other is the act of the party." 1 Atkins, 461—Hudson *v.* Hudson.

The note in this case was a valid one, and given upon a good and meritorious consideration, to wit, the services of the slaves of the plaintiff in and about the business of the defendants, and though the forms of legal proceedings precluded her for awhile from suing upon it, there is no reason, when these technical objections have ceased to exist, that it should not at least be considered as evidence of a contract.

There was here no *voluntary act of the party*, by which she was to be indefinitely bound. She had no option, no discretion to exercise, for all that was vested in the guardian ; and inasmuch as he, by the *act of law*, could not sue, the remedy was suspended, until a new and different state of affairs arose.

Before closing this part of the subject, we will refer to the case of Richards *v.* Richards, 2 Barn. & Ad., 447, cited by counsel for appellee. In this case, a married woman being administratrix, received a sum of money in that character, and lent the same to her

husband, and took in return for it, the joint and several promissory note of her husband and two other persons, payable to her, with interest—it was held, that, although she could not have maintained any action upon the note during the life-time of the husband, yet, that he having died, and it having been given for a good consideration, it was a chose in action surviving to the wife, and that she might bring an action upon it against either of the other makers, at any time within six years after the death of her husband, and recover interest from the date of the note. The case, also, of Bradford *v.* Williams, 4 Howard S. C. R., 587, can be quoted as having a bearing upon the case at bar.

The present suit, however, is not upon the note itself, and the party had a right to bring *indebitatus assumpsit,* though there was a special contract. " Though it is a rule, that when there was an *express* contract, the plaintiff cannot resort to an *implied* one, yet he may, in many cases, recover on the *common counts,* though there was a *special agreement,* provided it has been executed or completely performed." 1 Chitty Plead., 372, 7th Amer. Ed. So *indebitatus assumpsit* will lie to recover the stipulated price due on a special contract, not under seal, where the contract has been completely executed. 7 Cranch, 299. 9 Pet., 541. If the case be such, that, supposing *there had been no special contract,* a party could recover for money paid, or for work and labor done, then *indebitatus assumpsit* will lie. Cook *v.* Munston, 1 New Reports, 355. 4 Cowen Rep., 288. 1 Cowen, 378. 1 Archbold N. P., 63, 64. 2 Starkie on Ev., 92. B & P., 129.

It is admitted in the bill of exceptions, that the services were performed by the servants of the plaintiff, and this is evidence sufficient to support the general count ; for the consideration was executed, and nothing remained to be done, except the payment of the consideration money on the part of the defendants. To enforce this payment, this action is brought, and we think correctly so.

The note was brought into court, ready at any time to be cancelled on motion, and ceased to be operative as a promissory note. It was introduced to rebut the plea of payment, and to account for it as plaintiff was bound to do, ere he could recover upon the common counts, and as a piece of evidence, shewing the value of the services of the negroes. We regard it as legitimate evidence for that intent, and its effect was to be judged of by the jury.

It is admitted on the record and proven by evidence, that Lanier and West were partners, and after that fact is established, the act or declaration of either, relating to the subject-matter of partnership, is evidence as to the other.    2 Starkie on Ev., 44–5—1074. Gow on Part., 63.

There is nothing upon the record to show that Lanier had not authority to bind the firm by his written admissions, or that there was any fraud practised by Lanier in making these admissions.    There is no new contract attempted to be set up by the plaintiff, and virtually it is the same as the written one.    In any event, there was a legal obligation on the part of the appellants to pay, arising from the consideration received, and to enforce this obligation, this suit is properly brought.

We do not think the Court erred in sustaining the demurrer of the appellee to the appellant's rejoinder to the replication to the plea of the statute of limitations.    We do not conceive that the plea of the statute of limitations is to operate against plaintiff, on account of the facts set forth in the rejoinder, viz : that Lanier was guardian at the time of the accruing of the action, and continued to act as such guardian, long after said action accrued to him.    The remedy was suspended, as to action upon the note, so long as his character of guardian remained ; but beside that, the suit is not brought upon the note—he certainly was not guardian at the time of bringing the action.

Although an infant *may* sue by *prochein amie* it is not a consequence that he must do so necessarily to save the statute.    The right to sue and the privilege of availing himself of the statute are not incompatible.    The law gives both.    Besides, to say, that inasmuch as the infant could at any time sue, and not having sued therefore the statute cannot avail him, independent of depriving him of a positive right, it strikes us as a doctrine replete with the rankest injustice to a class of persons, whose interests the Courts will go far to protect.    Look at the results to grow out of such a doctrine.    Suppose the guardian through negligence or dishonesty will not sue, or as in this case could not sue, then, after the lapse of five years the debt would be barred according to this view.    Such a doctrine we cannot countenance.    In the case cited from Saunders, " It was said that the infant should have waited until his full age, because the six years had elapsed during his infancy, and therefore he could only

pursue his action according to the words of the saving clause of the statute, which is in six years (English act) after his full age, but this was not regarded by the Court ; and it seems to Saunders, that he may well pursue his action at any time within age, although the six years are elapsed. See for this case, the case of *non clarius in finis,* 2 Inst. 519, Cotton's case." 182 Ballantine on Limitations. Our statute of limitations as to its proviso, or saving clause preventing its operation, is almost *verbatim* similar to that of 21 Jac. 1, c. 16, the only real difference between them being that our statute leaves out the clause " *actions upon the case for words.*"

The same point taken here, that the word " *trespass*" in the saving clause of the statute did not embrace actions of assumpsit or upon the case, has been repeatedly decided that they were so embraced, as being within the equity of the statute.

In Chandler vs. Villet, Sid. 453, it was expressly adjudicated. An infant by his guardian brought action upon the case upon *assumpsit ;* the defendant pleaded statute of limitations, and plaintiff demurred, and the question was upon this proviso, which saves to infants actions of trespass, &c., and it was urged, that trespass upon the case is not mentioned in this saving. But the Court were of opinion, that this saving extends to actions upon the case (as no doubt it was intended) for there is a saving of trespass generally, and all actions upon the case are trespasses (scilicet) trespass upon the case, and it shall be mischievous, if other construction shall be made." Same point also decided in 242, sec. 15 Viner Ab. 104.

The case of Chandler *v.* Villet is reported at large in 2 Saunders' Rep. 120, where there is a citation of the case of Crosier *v.* Tomlinson, 2 Moad. Rep. 71. In the latter case the Court said "that upon the whole frame of the act it was strong against the defendant, for it would be strange that the plaintiff might bring an action of debt and not of *indebitatus assumpsit.* Where the scope of the act appears to be in a general sense, the law looks to the meaning, and it is to be extended to particular cases within the same reason, and therefore they were of opinion, that actions of trespass mentioned in the statute are comprehensive of this action because it is a trespass upon the case, and the words of the proviso save the infant's right in actions of trespass." Fitz. 81, Ballantine on Limitations, 83, 185–6–7.

The judgment of the Court below is affirmed.

*Per curiam.*

DOUGLAS, Ch. Justice, remarked:

That Judge Lancaster and himself, in order that their views, in regard to the first proposition discussed in the opinion pronounced in this case, may not be misapprehended or misunderstood, deem it proper to say, that they have reconsidered the doctrine of extinguishment as laid down by Judge Lancaster in the opinion delivered by him at the last term of this Court, in the case of Williams *v.* Moseley, 2 Florida Reps. 351 to 357, and find no cause to doubt its correctness, and therefore adhere to it; but that they do not consider the principles there asserted, as at all applicable to the facts of this case, which are very clearly, they think, distinguishable from those presented in the case of Williams *v.* Moseley. We have no doubt, continued the Chief Justice, of the plaintiff's right to recover in this case upon the second ground assumed. And indeed, we can see no good reason why she might not have maintained an action of *indebitatus assumpsit* at any time after the first of January A. D. 1842. On that day it appears that there was three hundred and thirty-five dollars due from the Quincy Steam Saw Mill Company for the hire of her two negroes. The contract was then fully executed. The authorities cited abundantly shew that, in such a case, *indebitatus assumpsit* will lie. And in Thomas *v.* Dyke 11 Vermont Reps. 273 it was held that "an infant may sue by *prochein amie* notwithstanding he has a guardian, if the guardian does not dissent;" and in Isaac *v.* Boyd, 5 Porter's Reps. 388, it was said, that a *prochein amie* is one admitted by the Court to prosecute for an infant, because otherwise the infant might be prejudiced by the refusal or neglect of his guardian. The Court may control him as well as a guardian *ad litem*, and should permit or direct what is most for the interest of the infant." Longnecker vs. Greenwade, 6 Dana Reps. 516, 2 United States Digest 162, No. 111–163, Nos. 132, 142. The trust of a *prochein amie* (it is said, 10 Petersdorf 579) was first created by statute, though by long practice it may now be considered as one of the rights of an infant, and was intended to provide for those cases where the lawful guardian omitted to protect the rights and interests of his ward or was *unable* or unwilling to commence a suit in his behalf. 5 Porters' R., 394.