## THE BANK OF COLUMBIA

*v.*

## PATTERSON'S *Adm'r.*

1813.

Feb. 5th.

---

*Absent* JOHNSON, J. and TODD, J.

ERROR to the Circuit Court for the district of Columbia, in an action of *indebitatus assumpsit,* brought by the Defendant in error against the president, directors, and company of the bank of Columbia, in their corporate capacity. There were four counts only in the declaration.

1st. *Indebitatus assumpsit, for matters properly chargeable in account.* 2d. *Indebitatus assumpsit, for work and labor done.* 3d. *Quantum meruit;* and 4th, *Insimul computassent.*

The Defendant pleaded *non assumpsit,* and a *tender.*

On the trial below, the Defendant took three bills of exceptions.

The 1st stated, that the Plaintiff read in evidence a sealed agreement, dated 10th December, 1807, between Patterson and a duly authorized committee of the directors of the bank, under their private seals. It recites, that a difference of opinion had arisen between

Upon a special contract executed on the part of the Plaintiff. Indebitatus assumpsit will lie for the price. A simple contract is not merged in a sealed instrument, which merely recognizes the debt, and fixes the mode of ascertaining its amount. Upon general counts, a special agreement executed may be given in evidence. The recital of a prior, in a later agreement, after it has been exe-

BANK OF COLUMBIA v. PATTERSON's ADM'R.

—————

cuted, does not extinguish the former. Wherever a corporation aggregate is acting within the scope of the legitimate purposes of its institution, all parol contracts made by its authorized agents are express promises of the corporation; and all duties imposed on them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action lies.

Patterson and the committee for building the new banking-house, as to certain work *extra* of an agreement made between Patterson and the said committee in 1804, and thereto annexed; whereupon it was agreed, that *all* the work done by Patterson should be measured and valued by two persons therein mentioned according to certain rates, called in Georgetown *old prices*, and the sum certified by them should be taken by both parties, in their settlement, as the amount thereof. It was also thereby agreed, that the *out-houses*, respecting which there had been no specific agreement, should be measured and valued by the same persons in the same manner. The agreement of 1804 referred to in, and annexed to the agreement of 1807, was also offered in evidence by the Plaintiff, and states, that Patterson had agreed with the committee to do all the carpenter's work required, agreeably to the plan of the new bank, and states particularly the manner in which it was to be done; and that "in consideration of the work being done" as stated, the committee agreed to pay Patterson 3,625 dollars as full consideration; and that if, when the work should be finished, the committee should be of opinion that that sum was too much, Patterson agreed to have the work measured, at the expense of the bank, by two persons mutually appointed, who should take the *old prices* as the standard, and in case the bill of measurement did not amount to the sum of 3,625 dollars, Patterson agreed to take the amount of measurement, for full satisfaction. The Plaintiff then read in evidence a paper of particulars of the work, certified by the persons named in the agreement of 1807. The Defendants offered in evidence the plan of the building, and that it was built principally according to that plan, and the agreement—and that any work other than that stated in the plan and agreement, was to be charged separately as *extra* work, and that it was so charged by Patterson, before the 10th of December, 1807, the date of the 2d agreement, who presented the account (so charged) to the Defendants, claiming the amount of the same, and claiming also for the work done under the agreement of 1804, the sum of 3,625 dollars, and proved, that while the work was going on, the Defendants paid Patterson sundry large sums of money on account thereof.

The Court was thereupon prayed by the Defendants to instruct the jury, that if they believed that the agreement of 1804 was assented to by Patterson and the committee as binding between them, and that the work therein contracted for was done by Patterson, and that the sum of 3,625 dollars therein mentioned was claimed by him on account of the same, then the Plaintiff could recover for no such work, but could only recover for the work done, *extra* of the said agreement; which instruction the Court refused to give.

It was contended by the Defendants counsel, MORSEL & KEY, that in that refusal the Court below erred because,

1. Although there were alterations in the building, after the agreement of 1804, yet Patterson was bound by that contract, *as far as it could be traced*—and could only recover for the extra work done under the counts of this declaration, which were all general. 1. *Comyn on contracts*, 360.—*Peake's cases*, 103.

2. Because the Plaintiff was allowed to recover the value of certain work by measure and value, under the general counts, when he had contracted to do the said work for a certain stipulated price. *Esp. N. P.* 138.

The second bill of exceptions states, that the Defendants, upon the same evidence, prayed the Court to instruct the jury, that the Plaintiff was not entitled to recover under any of the counts; which instruction the Court refused to give, but declared that the evidence was competent.

In this refusal, it was contended that the Court erred, because, the implied promise to pay for the extra work was merged in the agreement of 1807, and there was no count on that, or the other agreement of 1804. 2. *T. R.* 479. *Foster v. Allenson.*

The third bill of exceptions states, that the Defendants prayed the Court to instruct the jury, upon the same evidence, that the Plaintiff could not recover, unless he should prove that the Defendants, after the measurement and valuation, *expressly promised* to pay the amount

thereof to the Plaintiff—And that the jury could not from the evidence offered, presume any such promise.— This instruction the Court also refused.

It was contended that the Court erred in this refusal, because there was an express agreement under seal, relative to the work—and there was no count on that agreement.

It was also contended, that a corporation aggregate could not promise otherwise than under its seal—and therefore the law could not imply a promise.

In support of this proposition, the following cases were cited. *Bac. Ab. 13. Tit. corporation. 4. com. Dig.* 258. *Tit. Franchises.—Bro. corporation, pl.* 34.—1. *Vent.* 47— 1. *Salk.* 191.—1. *Bl. Com. pt.* 2.—1. *Roll. Rep.* 82.— 3. *P. Wms.* 419, *Rex v. Bigg.*

JONES & C. LEE *Contra*—cited 5. *Cranch,* 61. *De-veaux v. Bk. of U. S.—Doug.* 526, and *Kid. on Corporations* generally.

As to the form of action, viz. *assumpsit* and not *covenant* they said the instruments were under the private seals of the committee, not the corporate seal.—The declaration need not show whether the assumpsit be express or implied. 1. *Chitty on pleading,* 333, *note II.*

Where the contract is executed general *indebitatus assumpsit* lies. *Fitzgibbon* 302.—*Bul. N. P.* 139, *Weaver v. Burrows.* 1. *Wil.* 117. *Alcorn v. Westbrook, Dennison's opinion.* 4. *Bos. & Pul.* 330.—3. *Bos. & Pul.* 582. 6. *East.* 564, 569.—1. *Sanders,* 272, 276. *note* 2.—*Cowp.* 284, 289. 9. *East.* 349.—1. *T. R.* 134.—*Doug.* 24. *Watson v. Downes.*—4. *Dall.* 428.

STORY J. delivered the opinion of the Court, as follows :

Several exceptions have been taken to the opinion of the Court below, which will be considered in the order in which the objections arising out of them have been presented to us. We are sorry to say that the practice of filing numerous bills of exceptions is very inconve-

nient; for all the points of law might be brought before
the Court in a single bill, with a simplicity, which would
relieve the bar and the bench from every unnecessary
embarrassment.

As the argument on the first exception has proceeded
upon the ground, that the agreement of 1804 was com-
pletely executed and performed, and the objection re-
lates only to a supposed mistake in the form of the de-
claration, it will at present be considered in this view.
And we take it to be incontrovertibly settled, that *inde-
bitatus assumpsit* will lie to recover the stipulated price
due on a special contract, not under seal, where the con-
tract has been completely executed; and that it is not
in such case necessary to declare upon the special
agreement.—*Gordon v. Martin—Fitzgibbon* 303.—*Mus-
son v. Price* 4. *East* 147.—*Cook v. Munstone,* 4. *Bos. &
Pul.* 351.—*Clarke v. Gray,* 6 *East.* 564, 569. 2. *Sand.*
350. *note* 2.—In the case before the Court, we have no
doubt that *indebitatus assumpsit* was a proper form of
action to recover, as well for the work done under the
contract of 1804, as for the *extra* work. It may, there-
fore, safely be admitted (as is contended by the Plaintiff
in error,) that where there is a special agreement for
building a house, and some alterations or additions are
made, the special agreement shall notwithstanding be
considered as subsisting so far as it can be traced.
*Pepper v. Burland, Peake's Rep.* 103. The first excep-
tion therefore, wholly fails.

Under the second exception, the Plaintiff in error has
made various objections.

1. The first is, that though a promise would be im-
plied by law, for the *extra* work against the corpora-
tion, yet that such promise was extinguished, by ope-
ration of law, by the provisions of the *sealed contract* of
1807. It is undoubtedly true, that a security under
seal, extinguishes a simple contract debt, because it is
of a higher nature—*Cro. Car.* 415. *Raym.* 449. 2. *Jones*
158. 1. *Burr* 9.—5. *Com. Dig. tit. Pleader* 2. *G.* 12. But
this effect never has been attributed to a *sealed* instru-
ment which merely recognizes an existing debt, and pro-
vides a mode to ascertain its amount and liquidation.
At most, the sealed agreement of 1807. could not be

BANK OF
COLUMBIA
*v.*
PATTER-
SON'S
ADM'R.

construed to extend beyond this import. In no sense could it be considered as a higher security for the money originally due. This objection therefore cannot prevail, even supposing that the agreement were the deed of the corporation.

2. A second objection is, that the special agreements, connected with the certificates of admeasurement were inadmissible evidence under the general counts, and could be admissible only under counts framed on the special agreements.

To this objection an answer has already, in part, been given. And we would further observe that if the agreements connected with the admeasurements, were the means of ascertaining the value of the work, the evidence was pertinent under every count. 2. *Saund.* 122. *note* 2. And if the certificates of admeasurement were of the nature of an *award*, they were clearly admissible under the *insimul computassent count.* *Keen. v. Balshore* 1. *Esp. Rep.* 194.

3. Another objection is, that as the agreement of 1807 is sealed, and is connected, by reference with the prior agreement, they are to be construed as one *sealed* instrument, and assumpsit will not lie upon an instrument under seal.

The foundation of this objection utterly fails, for the agreement is not under the *seal* of the *Corporation*, but the *seals* of the *committee ;* and if it were otherwise, it is too plain for argument, that the original agreement was not extinguished, but referred to. as a subsisting agreement. It is quite impossible to contend that the mere recital of a prior, in a later agreement, after it has been executed, extinguishes the former.

Two other objections are made under this exception ; but as they are answered in the preceding observations, it is unnecessary to notice them farther.

Under the third exception, the only objections relied on, are in principle the same, as the objections urged under the former exceptions and they admit the same answers.

The case has thus been considered all along, as though BANK OF the contracts were made between the Plaintiff's adminis- COLUMBIA trator and *the Corporation,* and indeed some points in *v.* the argument have proceeded upon this ground. It is PATTER- very clear, however, that neither the first nor second 'SON'S agreements were made by the corporation, but by the ADM'R. committee *in their own names.* In consideration of the work being done, the committee, and not the corpora- tion, personally and expressly agree to pay the stipu- lated price. A question has therefore occurred how far the corporation were capable of contracting, except un- der their corporate seal ; and if it were capable, as no special agreement is found in the case, how far the facts proved, shew an express or an implied contract on the part of the corporation.

Antiently it seems to have been held, that corpora- tions could not do any thing without deed. 13. *H.* 8, 12.—4. *H.* 7, 6.—7. *H.* 7, 9.

Afterwards the rule seems to have been relaxed, and they were, for *conveniency's* sake, permitted to act in or- dinary matters without deed ; as to retain a servant, cook, or butler. *Plow.* 91. *b.*—2. *Sand.* 305. and gradu- ally this relaxation widened to embrace other objects. *Bro, Corp.* 51.—3. *Salk.* 191.—3. *Lev.* 107. *Moore* 512. At length it seems to have been established that though they could not contract directly, except under their corporate seal, yet they might by mere vote or other corporate act, not under their corporate seal, appoint an agent, whose acts and contracts, within the scope of his authority, would be binding on the corporation. *Rex v. Bigg,* 3. *P. Wms.* 449 ; and Courts of equity, in this respect seeming to follow the law, have decreed a specific performance of an agreement made by a major part of a corporation, and entered in the corporation books, although not under the corporate seal, 1. *Fonb.* 305, *Phil. ed. note (o.)*—The sole ground upon which such an agreement can be inforced, must be the capacity of the corporation, to make an unsealed contract.

As it is conceded, in the present case, that the com- mittee were fully authorized to make agreements, there could then be no doubt, that a contract made by them in the name of the *Corporation,* and not in their own names,

would have been binding on the corporation. As, how-ever, the committee did not so contract, if the principles of law on this subject stopped here, there would be no remedy for the Plaintiff, except against the committee.

The technical doctrine, that a corporation could not contract, except under its seal, or, in other words, could not make a *promise*, if it ever had been fully set-tled, must have been productive of great mischiefs. In-deed as soon as the doctrine was established that its re-gularly appointed agent could contract in their name without seal, it was impossible to support it; for other-wise the party who trusted such contract would be without remedy against the corporation. Accordingly it would seem to be a sound rule of law, that wherever a corporation is acting within the scope of the legiti-mate purposes of its institution, all parol contracts made by its authorized agents, are *express* promises of the corporation ; and all duties imposed on them by law, and all benefits conferred at their request, raise *implied* promises, for the enforcement of which, an action may well lie. And it seems to the Court, that adjudged cases fully support the position. *Bank of England v. Moffat,* 3. *Bro. Ch. Rep.* 262.—*Rex. v. Bank of England Doug.* 524, *and note ibidem.*—*Gray v. Portland Bank,* 3. *Mass. Rep.* 364.—*Worcester Turnpike Corporation v. Wil-lard,* 5. *Mass. Rep.* 80.—*Gilmore v. Pope,* 5. *Mass. Rep.* 491.—*Andover & Medford Turnpike Corporation v. Gould,* 6. *Mass. Rep.* 40.

In the case before the Court, these principles assume a peculiar importance, The act incorporating the Bank of Columbia, *(act of Maryland, 1793, ch. 30,)* contains no express provision authorizing the corporation to make contracts. And it follows, that upon principles of the common law, it might contract under its corpo-rate seal. No power is directly given to issue notes not under seal. The corporation is made capable to have, purchase, receive, enjoy and retain, lands, tene-ments, hereditaments, goods, chattels and effects, of what kind, nature, or quality, soever, and the same to sell, grant, demise, alien, or dispose of—and the board of directors are authorized to determine the manner of doing business, and the rules and forms to be pursued; to appoint and pay the various officers, and dispose of

the money or credit of the bank, in the common course of banking, for the interest and benefit of the proprietors. Unless, therefore, a corporation, not expressly authorized, may make a promise, it might be a serious question, how far the bank notes of this bank were legally binding upon the corporation, and how far a depositor in the bank could possess a legal remedy for his property confided to the good faith of the corporation. In respect to insurance companies also, it would be a difficult question to decide, whether the law would enable a party to recover back a premium, the consideration of which had totally failed. Public policy therefore, as well as law, in the judgment of the Court, fully justifies the doctrine which we have endeavored to establish. Indeed the opposite doctrine; if it were yielded to, is so purely technical, that it could answer no salutary purpose, and would almost universally contravene the public convenience. Where authorities do not irresistibly require an acquiescence in such technical niceties, the Court feel no disposition to extend their influence.

BANK OF COLUMBIA v. PATTERSON'S ADM'R.

Let us now consider what is the evidence in this case, from which the jury might legally infer an express, or an implied promise of the corporation. The contracts were for the exclusive use and benefit of the corporation, and made by their agents for purposes authorized by their charter. The corporation proceed, on the faith of those contracts, to pay money from time to time to the Plaintiff's intestate. Although, then, an action might have laid against the committee personally, upon their express contract, yet as the whole benefit resulted to the corporation, it seems to the Court, that from this evidence the jury might legally infer that the corporation had adopted the contracts of the committee, and had voted to pay the whole sum which should become due under the contracts, and that the Plaintiff's intestate, had accepted their engagement. As to the extra work, respecting which there was no specific agreement, the evidence was yet more strong to bind the corporation.

In every way of considering the case, it appears to the Court, that there was no error in the Court below, and that the judgment ought to be *affirmed*.