WILMINGTON and PHILADELPHIA TURNPIKE COMPANY, Appellants vs. SAMUEL BUSH, Respondent, p. b.

*A purchaser of stock need only look to the title of his vendor on the books of the company, and is not affected by previous irregularity in the transfers.*

APPEAL from the judgment of a justice of the peace. Narr. Assumpsit for dividends. Plea, non-assumpsit. Issue.

This was an action by Bush, for the dividends on nine shares of stock in this turnpike, standing in his name on the books of the company. This stock originally belonged to James Eaves. He placed the scrip in the hands of John Platt, as an indemnity against some suretyship; for which, however, John Platt never suffered any loss. John Platt holding the stock thus, assigned it (irregularly,) to James Platt. There was *never any transfer on the books of the company*, from Eaves to Platt. James Platt assigned the stock and *transferred it regularly*, on the books of the company to Potter, and Potter transferred it *regularly* in like manner, to Bush, the plff. below. The company has *paid previous dividends on this stock to Bush*. The stock was attached and sold as the property of James Eaves, who had never transferred it to any one on the books of the company. After this the company refused to pay the dividends to Bush; and this action was brought to recover them. The regularity of the transfer from Potter to Bush, by Edward Tatnall, the treasurer of the company, a special agent for that purpose, was proved.

Verdict for plff. subject to the opinion of the court on these facts.

*J. A. Bayard,* for respondent plff. below.

This stock is regularly transferred to Bush on the books of the company, and we can look no further back. He is legally the owner of it. 9 *Com. Law Rep.*, 444, *Davis* vs. *Bank of England,* (450.) Bank stock transferred on a forged power of attorney, the purchaser is entitled to recover the dividends from the bank. It is not necessary to look beyond the title of the seller on the books of the bank.

*Hamilton,* for appl'ts.

The Company is not bound by the acts of its officer out of the scope of his powers. An agent must act within his authority. *Angel* and *Ames on Corp.* 332-3; 7 *Cranch,* 299, 305. This transfer by Mr. Tatnall, was not within his authority, and the company are not bound by it. John Platt was never a member of this corporation, and he could not legally transfer the stock. A corporation can only act in pursuance of its charter. 2 *Cranch,* 166; 4 *D. L.* 630-3.

*Wales,* on the same side.

No person can acquire a title to stock except under a regular transfer on the books of the Company. The person who buys the stock, and not the Company, is bound to look into the title. 3 *Day's R.* 544; 2 *Day's R.* 579, 583; 3 *Wheat.* 390; 2 *S. & Rawle,* 77; 17 *do.* 15;2 *Wms.* 77; 2 *Atkyns* 121.

*Bayard,* in reply.

The cases cited on the other side are in relation to the first assignee. But this is the case of subsequent purchasers under regular transfers, in the books of the company. Those cases would apply to

Platt but not to Bush, who derives title under Potter by a regular assignment.    Potter also had a regular title from James Platt.    The case in 9 *Com. Law Rep.* 444, lays down the principle as we here contend for it, in relation to subsequent assignees.    We have only to look to the assignment to ourselves, and not to previous owners of the stock.    There is no individuality in the shares of stock; and it cannot be traced back beyond the assignor and assignee.

*Cur. ad. vult.*

Nov. Term, 1832.

HARRINGTON, *Judge*, now delivered the opinion of the court.

This is an action for dividends on stock standing on the books of this Company in the name of the plff. below.    His title to the stock is derived, under a regular assignment on the books of the Company, from Elijah Potter the former holder, who also derived it, by regular assignment, from James Platt.    The Company has paid previous dividends to the plff. below; but they refuse to pay any further dividends on account of a defect in the title of James Platt, a former holder of the stock.

It appears, in tracing back the title to this particular stock, that it formerly belonged to a certain James Eaves, who placed the scrip in the hands of John Platt, without any transfer on the Company's books, as an indemnity against some suretyship.    While it was thus held by John Platt, he transferred it *irregularly* to James Platt, who subsequently passed the title by *regular* transfer to Potter, from whom the plff. derived by *regular* assignment.    It appears that the liability in contemplation of which the scrip was placed in the hands of John Platt never arose; and this stock has now been attached and sold as the property of James Eaves.

The defts. contend that the title has never been divested out of Eaves by any of these transfers.    He never made or authorized any transfer on the books of the Company, and no holder of the scrip, not deriving title by regular transfer from Eaves, could himself make such an assignment as would divest Eaves' title.    That notwithstanding the transfers from James Platt to Potter, and from Potter to plff., were made in due form in the Company's books, the previous irregular assignments had not divested the title of Eaves, nor constituted them legal members of the corporation; and, consequently, that their transfers can have no operation in passing the title to this stock.    It is further contended, that the acts of the treasurer of this Company, in making these transfers, are not binding upon the Company, because they were without the scope of his authority.

This is not a question between Eaves, the former holder of this stock, who still claims title to it, and the Company; nor is it between Eaves and the plff.    It may be, that these irregular transfers permitted by the Company, have not had the effect to divest the title of Eaves, but it does not follow that they have not invested the plff. with a legal claim both to the stock and the dividends.    The former question was considered in the case of *Davis* vs. *The Bank of England*, 9 *Com. L. R.* 444, where it was decided, that property in stock is not transferred from the owner by being placed under a forged power of attorney, to the name of another person on the books of the bank; but the second proposition is not decided, that the as-

signee on the books of the bank, under a forged power of attorney, does not acquire the legal property in the stock: and the court go out of their way in order to prevent public alarm to express an opinion, that the bank cannot refuse to pay the dividends to *subsequent* purchasers of such stock. The principle of that opinion, is the gist of this case. The charter of this Company, authorizes transfers to be made only on their books. They keep a book for this purpose, and an officer to attend to this duty. The entry on their books of an assignment of stock to any individual, is evidence of that individual being the legal owner of that particular stock. And shall a subsequent purchaser, buying on the faith of this evidence, be told by the Company, that their books are wrong; and that, though they exhibit his vendor as the legal owner of the stock he has purchased, the property is in fact in another person? The assignable nature of this kind of property constitutes its chief value; it would go far to destroy this character if the purchaser is bound to look any further back than to the title of his vendor. And what better evidence can he have of this, than the books of the corporation, which declare him to be the owner, and recognize him as a member of the corporation. If this will not secure a purchaser it is difficult to say how he can be secured. In most cases, it will be impossible for him to trace individual stock back to the first proprietor, for in the frequent changes of this property, it becomes commingled and united in so many different forms, that it is impossible to trace the course of its alienation. The best and most reasonable principle, therefore, is that expressed in the opinion of the court in the case cited, that it is not necessary for the purchaser of stock to look further for the title of his vendor, than the books of the Company. Nor is this imposing any unreasonable responsibility on the Company. In all transfers they have the right and the power, to inquire fully into the title of the person proposing to make the transfer, and it is their duty to do so. In this case, ordinary prudence on the part of the turnpike company, would have prevented the present difficulty. No regular transfer was ever made on their books from Eaves to John Platt, nor from John Platt to James Platt. It was apparent to them therefore, for their own books showed it, that at the time they permitted James Platt to transfer to Potter, he had no authority to do so. Had the matter rested here, no liability on the part of the Company to subsequent purchasers could have arisen; but, instead of inquiring into the title of James Platt, thus appearing from their own books to be defective, as in ordinary prudence they ought to have done, they permitted him to make a regular transfer to Potter, and allowed Potter to assign to plff., whom they have recognized as the legal proprietor, by the payment of the dividends. Shall they now dispute his right? We think not.

We confine our opinion strictly to the case of a subsequent purchaser, which is the present case. Whether Potter would stand on the same ground we do not decide, and there is a clear distinction between that case and this. Potter's vendor had no regular assignment; and, though it was the duty of the Company to look into his title, it was also the duty of Potter. In a question, therefore, between Potter and the Company, both being guilty of negligence, and

the former being especially bound to know the title of his vendor, we do not say that the Company would be bound.   The contrary is decided in 2 *P. Wms.* 77, *Hilyard* vs. *South Sea Co. & Keate*, as to the effect of a forged letter of attorney to transfer stock; but this decision does not appear to have been followed for *Ashly* vs. *Blackwell*, (*Ambler*, 503) is contra.

On the whole, we think the plff. entitled to recover these dividends, and that the verdict ought to stand.

Judgment for plff. below.

*Hamilton* and *Wales*, for appl't.
*J. A. Bayard*, for respd't., p. b.