# SULLIVAN,

## JULY TERM, A. D. 1857.

---

### KEYSER v. DISTRICT NUMBER 8, IN SUNAPEE.

A committee, appointed by a school district according to the statute, to purchase and repair a school-house, are public officers, and a majority of them have authority to act for the whole.

Where a school district pass a legal vote to purchase a building for a school-house, and raise funds for that purpose, and certain persons, acting as a committee of the district, make a bargain in behalf of the district for the purchase of the building at an agreed price, if the district afterwards take possession of the building and retain and occupy it for a school-house, in an action by the owner of the building against the district to recover the price, the defendants can not deny the authority of the committee to make the purchase, and are bound, in the absence of fraud or mistake, to pay the price agreed on by the committee, although they acted, in making the purchase, without any legal antecedent authority.

In such case the district, by claiming and holding the building under the purchase made in their behalf, ratify the action of the committee, and are bound by the ratification, as in the case of natural persons.

If the owner of a building, standing on land of another, sell it for an agreed price, and the purchaser take possession and hold the building under the sale, the seller may recover the price in general *indebitatus assumpsit* for goods sold and delivered.

In such case no deed or other writing is necessary to convey the interest of the owner in the building to the purchaser.

ASSUMPSIT, in two counts ; the first, for a balance on an account annexed, consisting of several items, for work done and materials found " in erecting the new school-house ;" the second, for work and labor, materials found, money had, money paid,

and for goods, wares and merchandise sold and delivered. Plea, the general issue.

It appeared on trial that School District No. 8, in Sunapee, was established August 30, 1851, and at a regular meeting, held on the 10th of December, 1851, voted " to purchase the school-house now in the district of its present owners." At the same meeting the district raised $325, and appropriated it to purchase the house and the land on which it stood, and to put the house in repair, with all necessary fixtures, for the use of the school, and appointed a committee of three " to settle the affairs of the district; that is, to receive the money, pay all bills against the district, make all necessary repairs on the school-house," &c.

The committee appointed a time and place of meeting, and gave all persons notice having claims against the district to present them for allowance. The plaintiff, who had provided materials and performed services, as stated in his account annexed to the writ, presented his claim to the committee, and it was examined and allowed by the majority, being all the members that attended the meeting. The committee purchased the land on which the school-house stood, repaired the house and furnished it with fixtures, expending for those purposes about thirty dollars. The house thereupon passed into the possession of the district, and has been ever since occupied by them for a school-house.

Of the money remaining, amounting to about $295, the committee paid to sundry persons, having claims upon the house for services and materials employed in its erection, the full amount of their respective claims, and ten dollars to the plaintiff in part of his claim, and there remained in their hands money sufficient to pay the balance of the plaintiff's claim, as allowed by the committee. This sum of ten dollars was paid upon an understanding between the plaintiff and the chairman of the committee, that if there were any difficulty about it the plaintiff should repay it. It appeared that the school-house was built before the district was established.

The defendants moved for a nonsuit, on the ground that the

school-house, having been built before the district was formed, they could acquire title to the house by purchase only, which must be by special contract, and therefore general *indebitatus assumpsit* would not lie ; but the motion was denied. They also moved the court to instruct the jury, that the plaintiffs must prove the labor to have been performed, and the materials found, at the previous request of the defendants, express or implied ; and that, inasmuch as the defendants had no legal existence when they were performed and provided, the action could not be maintained ; which the court declined to do.

The court instructed the jury, that if the plaintiff, on the 10th of December, 1851, was an owner or proprietor of the school-house which the district then voted to purchase of its owner, by virtue of services rendered and materials found for its erection, upon the house passing into the possession of the district in pursuance of that vote, the law implied a promise on the part of the district to pay him for his interest in the house out of the money raised and appropriated for that purpose, such sum as he was entitled to receive, in proportion to his interest compared with that of the other owners ; that, after deducting from the whole amount raised the amount expended for land, repairs and fixtures, the district was held to pay the residue to the several owners of the house, in proportion to their respective interests in it ; that if the plaintiff had not received his just share of such residue, he was entitled to recover in this suit the balance, with interest from the time of demand ; that, though the district could act only by their votes, and the committee could create no liability, if the committee appointed to settle the affairs of the district recognized and allowed any particular sum as the amount of the plaintiff's interest in the house, they might regard such recognition and allowance, not as conclusive, but as *primâ facie* evidence, tending to show the value of the plaintiff's interest in the house, of greater or less weight, as they might think it entitled to more or less consideration.

The jury returned a verdict for the plaintiff, which the defendants move to set aside.

*Cushing*, for the plaintiff.

*Burke*, for the defendants.

PERLEY, C. J. It would seem from the case that certain individuals united to erect a building for a school-house on land belonging to another. This being done by license of the land-owner, the building would be personal property, and would belong to those who erected it. The proprietors of the building would have no interest in the lands. The building would be mere personal property, and each proprietor might sell his share without deed or other writing, as in case of any other personal property owned in common with others.

The district voted to purchase this building for a school-house, raised money for that and certain other purposes, and appointed a committee " to settle the affairs of the district," &c. That committee purchased the land on which the school-house stood, repaired the building, and assumed to settle the amount which each proprietor of the building was to have for his share of the purchase money, and actually paid all the proprietors the sums allowed and fixed for their shares, except the share of the plaintiff. The building, with the consent of the owners, passed into the possession and use of the district for a school-house, and has been, and is claimed and used as their property by the district, who now own the land on which it stands. It no longer stands on land of another by his license, but is now appurtenant to the land, and in law a part of it. After what has passed, the plaintiff can assert no right to any interest in the building; it has become the property of the district.

Are the district bound by the action of the committee in purchasing the building and settling on the price to be paid to the several proprietors? The district voted to purchase the house; this would not amount to an actual purchase. But they at the same time voted to repair the house, and furnish it with fixtures, and appointed a committee to make the repairs, settle the affairs of the district, and pay all bills. The statute authorizes school

districts to act by agents in such matters, and this committee, being appointed under the statute, were public officers ; they acted in a public capacity for the district, which is a public corporation, and the majority of the committee might act for the whole, as in the case of other public officers, like selectmen. We think that a committee of a school-district, legally appointed, are public officers within the meaning of the statute, which gives a majority of such officers authority to act for the whole, and the action of two committee men, in settling and allowing claims against the district, was as binding as if all had acted.

The committee, assuming to act as agents for the district, treated with the proprietors as if a purchase had been made of the building, and paid the price to be paid. The district had no right to the building ; they could not take it into their possession, make the repairs which they ordered, and appropriate the building to their own use, until they had purchased it of the owners. The transaction between the committee and the owners of the building was in substance a purchase made by the committee in behalf of the district, at the price for each share allowed and settled by the committee ; and whether the antecedent authority of the committee, under the vote, extended to the making of the purchase or not, the district have taken possession of the building, repaired it, and retain it as their own by virtue of that purchase made in their behalf, and have thus certified and confirmed the action of the committee in making the purchase in the name of the district; and the corporation are bound by this ratification, as in the case of natural persons. *Episcopal Society* v. *Episcopal Church*, 1 Pick. 372 ; *Bank* v. *Patterson*, 7 Cranch 299 ; *Randell* v. *Van Oechten*, 19 Wend. 60 ; *Trott* v. *Warren*, 2 Fairfield 227.

Money was raised for the purchase of the building and certain other purposes ; all the other proprietors of the building have been paid, and all the other objects for which the money was raised have been answered, and there still remains in the hands of the committee enough of the money to pay the plaintiff's demand in full. There is, therefore, no implied limitation on the

power to purchase from deficiency in the sum voted and raised for that purpose.

And the district having thus ratified the act of the committee in making the purchase, have ratified the bargain by which the committee paid the price to be paid to the several proprietors. If the principal ratify part of the act of the agent, so as to take a benefit under it, he ratifies the whole of the doings of the agent belonging to that transaction. Story on Agency, sec. 250.

Unless something were shown to defeat the effect of the allowance and settlement made by the committee, fixing the price of the respective shares, the district would be bound to pay that price, and the restrictions of the court on this point were sufficiently favorable to the defendants. If no price were agreed on, the building having passed into possession of the defendants, and become their property under this sale, they would be bound to pay the plaintiff for the just value of his interest, at least to the amount of the money raised and remaining in the hands of the committee for that purpose, which the case finds to exceed the amount of the plaintiff's claim.

The contract in this case, whether express or implied, was executed and fully performed on the part of the plaintiff. He had presented his claim, which was allowed ; had received ten dollars towards it, and, with the other proprietors, had permitted the building to pass under the purchase into the possession of the defendants, and to become their property. This was in law a sale and delivery ; and all that remained to be done was for the defendants to pay the plaintiff the price of his share. Where an obligation to pay a sum of money arises out of a special contract not under seal, and which has been performed on the part of the plaintiff, the money due becomes a debt, and may be recovered *in general indebitatus assumpsit,* without setting out the contract out of which the debt arose. In that form of action the allegation of the declaration, is that the defendant was indebted, in a certain sum, for money had, for goods sold, &c., and in consideration of the debt promised to pay the sum due ; and if a sum of money is due for goods sold, &c., it may be recovered

under the general averment, though the debt arose out of a special contract. 2 Saunders 350, note 2; *Williams* v. *Sherman*, 7 Wend. 109; *Bank of Columbia* v. *Patterson's Ex'r*, 7 Cranch 303.

In this case, however, I am not able to see how there can be said to have been any special contract. The plaintiff owned a share in the building, and made a sale of it to the defendants, who took possession and hold under the sale. This is no more than the ordinary case of a sale and delivery at an agreed price, or on a *quantum valebat.*

The plaintiff cannot recover for work and labor or materials found, inasmuch as no work was done or materials found for the defendants. He worked and found the materials for himself. *Moor* v. *Ross*, 7 N. H. 528; *Moor* v. *Ross*, 11 N. H. 547.

But he may recover for his interest in the building, though the price to be paid was ascertained by reckoning the value of his labor, and of the materials which he furnished towards the house. *Moor* v. *Ross*, *qua supra.*

Can he recover under his general count for goods, wares, and merchandise sold and delivered? in other words, will the term "goods," used in the declaration, include a building which stands on land of another, and is personal property? We think it may.

The word "goods," as a technical term of the law, is *nomen generalissimum*, and has a very extensive meaning. In a will, where there is nothing to restrain its operation, it includes all the personal estate of the testator. 1 Jarman on Wills 692. In a strict sense, as the word is understood in the construction of penal statutes, it is limited to movables belonging to the property of some person, which have an intrinsic value, and does not include securities, which are not valuable in themselves, but merely represent value. *United States* v. *Moulton*, 5 Mason 544.

This building was movable property, belonging to the plaintiff and the other proprietors, and falls within the strict common law definition of the term "goods," as given in the *United States* v. *Moulton*. In construing agreements the application of the term

is often restricted; but in its legal sense, as answering to the law term "Biens," it includes all tangible personal property, even living animals. The declaration is a technical statement of the plaintiff's claim, and in this action of general *indebitatus assumpsit* it does not in fact give, and is not intended to give, any specific and popular information as to the nature of the demand. If that is desired, the defendant's course is to apply for a specification, which would inform him as fully and as effectually, where the suit was brought to recover for a building, or share of a building, sold and delivered, as in any other case of general *indebitatus assumpsit* for goods sold and delivered. The term " goods" in its legal sense is broad enough to include a building standing on land of another; and we think the price of such a building may be recovered in an action for goods sold and delivered.

The undivided share of each proprietor in the building was treated in the purchase as a separate interest; the other proprietors have all been paid; the claim of the plaintiff was several, and was properly sued by him alone.

*Judgment on the verdict.*