THE CRESCENT CITY BANK and Others *v.* CARPENTER.

PLEDGE.—ASSIGNMENT IN TRUST.—A, being indebted to the Crescent City Bank, assigned by an instrument in writing to B, who was cashier of the bank, five hundred shares of the stock of the bank, in trust, for the purpose of securing the debt. B. was not described in the writing as cashier, nor did he sign it as such. It was stipulated in the writing that, in

case of a failure to pay the debt in installments, at specified dates, B might sell the stock, after giving twenty days public notice. Suit by C, to whom A had sold the stock, subject to the payment of the debt to the bank, alleging a tender of the amount of the debt, and a refusal to transfer the stock to him. Answer, that upon a failure to pay one installment of the debt, B, after giving the notice required, had sold the stock to the bank.

*Held*, that if the stock was held by the bank as a pledge, the sale was invalid, first, because there was no demand of payment before sale, and second, because the pledgee became the purchaser.

But, *held*, that the assignment of the stock was not to the bank, but to B personally, and not as cashier, and the sale to the bank was consequently valid.

APPEAL from the *Vanderburgh* Circuit Court.

FRAZER, J.—The complaint in this case alleged that *Willard Carpenter* had been the owner of five hundred and ten shares of the stock of the *Crescent City* Bank; that a firm of which he was a member owed the bank, on the 20th of *February*, 1858, the sum of $9,000 with interest, &c.; that to secure that indebtedness, he gave the bank an order drawn on one *J. C. Jewell*, by the firm, dated *February* 18, 1858, payable to *William Baker*, cashier of the bank, and accepted by *Jewell*, and also assigned said stock on the bank books to said *Baker*, who was, and still is, cashier of the bank, in pursuance of a written agreement, to-wit:

"This memorandum of agreement, made this 20th day of *February*, A. D. 1858, between *William Baker*, party of the first part, and *Willard Carpenter*, party of the second part, &c." The instrument then recites that the *Crescent City* Bank, at *Evansville*, holds the acceptance of *Willard Carpenter & Co.* for $9,000, due and protested for non-payment on the 8th of *February*, 1858. That to secure the payment of this acceptance, with interest and charges, the said *Willard Carpenter & Co.*, on the 18th day of *February*, 1858, gave to the said bank an order on *J. C. Jewell*, directing him to pay said *William Baker*, cashier of the said bank, for the use of said bank, the sum of $9,500, out of moneys and effects in his hands belonging to the said *Willard Carpenter & Co.*, which order was, on the 18th day

of *February*, 1858, accepted by the said. *Jewell.* That on the 20th day of *February*, 1858, the said *Willard Carpenter*, party of the second part, assigned to said *William Baker*, on the books of said bank, five hundred and ten shares of the capital stock of said bank.

After making these recitals, the instrument goes on to declare the trust, by saying: "Now this agreement witnesseth, that the said stock is held in trust by said *Baker*, for the benefit of said bank, as a security for the payment of the said sum of $9,000, with interest," &c., and then the instrument uses this language, "And it is agreed, by and between the said *Baker* and the said *Carpenter*, as follows, to-wit, that if said bank shall realize from said order on said *Jewell* one third of said debt, within four months from this date, another third within eight months from this date, and the remaining third within twelve months from this date, then the said bank stock shall not be resorted to or sold for the payment of said debt or any part thereof; but if said bank shall fail so to realize," &c., "then the said *Baker* may sell and transfer so much of said stock as may be necessary" to make the amounts of each of said installments so in arrear. Then follows the terms upon which the stock may be sold. It must be at public auction, of which twenty days notice must be given, by publication in an *Evansville* paper. It was also agreed that if the debt to the bank should be paid without resorting to the sale of the stock, then the stock should be re-assigned "by the said *Baker* to said *Carpenter*," &c. "In witness whereof the said *William Baker* and *Willard Carpenter* have herewith subscribed their names, the date first aforesaid.                    "W. Baker,
                    "Willard Carpenter."

The complaint also alleged that this agreement was assigned by *Willard Carpenter* to the plaintiff, in writing, by which assignment it was directed that upon the payment of the debt to the bank, the stock should be properly transferred by *Baker* to the plaintiff; that on the 3d of *December*, 1858, the plaintiff

paid all of said debt to the bank but $2,080, and on the 6th of the same month tendered to *Baker*, for the use of the bank, $2,000, in full for the balance, and demanded a transfer of the bank stock to himself; that *Baker* had previously so transferred three hundred and fifty shares to the plaintiff, but refused to receive the money tendered, or to transfer the remaining one hundred and sixty shares of stock, worth $4,000; that the directors of the bank, being informed of the facts, refused a request to cause the transfer to be made, and claim that the defendant *Reitz*, who was and is president of the bank, is the owner of the stock. It is also alleged that dividends have accrued upon the stock, which ought to be credited upon the debt, but which have been appropriated to the use of the bank, without credit. The prayer was for a transfer of the stock, or for its value in money, and for general relief.

The defendants answered in one paragraph, alleging a failure to realize one-third of the debt due from *Carpenter* within four months from *February* 20, 1858; that thereupon *Baker*, at public auction, at the bank, on the 19th of *July*, 1858, sold said one hundred and sixty shares to the defendant *Reitz*, president, &c., for the use of the bank, for $2,080, that being the best price that could be obtained; that he first advertised the sale by publishing in an *Evansville* daily newspaper, on the 19th of *June*, 1858, and daily thereafter, except *Sundays*, the following notice:

"SALE OF BANK STOCK."

"I will sell at public auction, at the *Crescent City Bank*, in the city of *Evansville*, on *Monday*, *July* 19, 1858, at 10 o'clock A. M., 160 shares of the capital stock of the *Crescent City Bank*, held by me as collateral security for the payment of a debt due the bank. Terms cash."

(Signed) "W. BAKER."

The answer also avers the transfer of the stock to *Reitz*,

on the books of the bank, in pursuance of the sale, and denies the receipt of any dividends.

A demurrer to the answer was sustained, and the defendants refusing to answer further, a judgment was rendered requiring a transfer of the stock to the plaintiff. There were exceptions to the ruling upon the demurrer, and to the judgment. Was the answer a bar to the suit? If the stock was held by the bank as a pledge, then the sale was invalid for two reasons. 1. There was no demand of payment preceding the sale. 2. The bank could not, at any rate, become the purchaser. It is the opinion of the majority of the court that the stock was transferred to *Baker* personally, in trust, and not to him in his character as cashier and agent of the bank. There may be a special assignment of property to a third person by a debtor, to secure a creditor, and this assignee may be the person who happens to be cashier of a bank, though the bank be the creditor. There is nothing in the law or its policy to forbid this. Or the property may be delivered to the creditor directly, as a security. The latter would be a pledge, while the former would not.

In the case before us, it is to be observed that the assignment was to *Baker* merely, without any mention of his being cashier of the bank. The agreement, too, is executed by *Baker* and *Carpenter*, and but for the fact that it describes the order on *Jewell*, which was payable to " *William Baker*, cashier" of the bank, it could not be ascertained from either the assignment or the agreement that *Baker* had ever been an officer of the bank. The stipulation that "said stock is held in trust by said *Baker* for the benefit of the bank, as a security" for the debt, would have been a proper and necessary clause in any view of the question in controversy. A security in any form must, in the nature of things, have been for the benefit of the bank. If, notwithstanding this careful exclusion from the instrument of the fact that *Baker* was then an officer of the bank, the transfer is still to be deemed to the bank, it is not possible, without

express negative words, to frame such an instrument, (when the assignee is cashier,) so that it will operate otherwise than as evidence of a pledge. There is no rule for the construction of contracts which gives any warrant to such a mode of interpretation, and certainly none applicable to a case to which a bank is a party, which must not also be applied where the litigants are natural persons. In this case it seems clearly to have been intended to repose a personal trust in *Baker*, and if he had ceased to be cashier before the occasion arose to sell the stock, the sale could not have been made by his successor as cashier. *Carpenter* would have had, in that case, a right to insist that he had confided in the integrity of *Baker* for the protection of his interests, and had conferred the power to sell upon him personally, and not upon the bank. The writing would have sustained him. In that case this construction would have resulted to his advantage, and would have avoided the sale. Again, if the stock had been improperly disposed of, the debt having been paid, and the bank had afterwards become insolvent, *Baker*, upon being sued for the conversion, could not have defended himself by the answer that the transaction was a pledge to the bank. *Carpenter* would have appealed successfully to the express letter of the instrument and of the assignment, and *Baker* would have been held liable upon the ground that the trust was reposed, not in the bank, but in him.

The cases cited in the careful argument for the appellee do not, it seems to us, conflict with the opinion already expressed. In the *Mechanics' Bank, &c.,* v. *The Bank of Columbia,* 5 Wheat. 326, the instrument, though signed by the cashier in his own name, bore upon its face other evidence that it was a corporate and not an individual transaction. *The Bank of Columbia* v. *Patterson's Adm'r,* 7 Cranch 299, was a case where, by the form of the contract, the agents, having contracted in writing in their own names, were personally liable, yet as the whole benefit of the contract had inured to the principal, and there was evidence from which

it might be inferred that the principal had adopted it, by making payments upon it, the latter was held liable. This class of cases stands upon the principle that the agent was authorized to contract in his own name, and thereby bind the principal. See Story on Agency, § 152, and cases cited in the note. In *Fleckner* v. *The U. S. Bank*, 8 Wheat. 338, the question was whether the authority of the agent of a corporation, and the instrument executed by him as such, must be under the corporate seal, and it was ruled in the negative. It does not appear in the report of the case that the agent executed the instrument (the indorsement of a note) in his own name.

The judgment is reversed, with costs, and the cause remanded, with directions to overrule the demurrer to the answer.

GREGORY, C. J., *dissenting.*—I cannot concur in the opinion of the majority of the judges in the case at bar. Taking the transaction as it occurred, I think it clear that the transfer of the stock to *Baker* was in law and in fact a pledge to the bank; that *Baker* acted, not as an indifferent third party, but in his official character, as cashier and agent of the bank, and was under its control, and that, therefore, every act of his with reference to the indebtedness of *Carpenter & Co.*, and the stock pledged, was the act of the bank itself, and that the sale of the stock by *Baker* to *Reitz* was a sale by the bank to itself.

It is one of the most important official duties of a cashier, one which is discharged habitually and daily by every cashier, to collect debts due to the bank, and secure such debts as are not paid promptly. In taking securities it is a common practice to use the name of the cashier, and, in the absence of evidence to the contrary, whatever is done by a cashier, in his own name or otherwise, in relation to the ordinary business of the bank, and for its benefit, will be deemed the act of the bank itself, so far at least as third persons are concerned, and especially when, as in

this instance, the bank is the only party having a beneficial interest in the transaction.

In *The Mechanics' Bank, &c.,* v. *The Bank of Columbia,* 5 Wheat 326, the check sued on was drawn by *William Paton, jr.,* in his own name. He was no where in the instrument described as the cashier of the bank. The court held that the acts of agents do not derive their validity from professing on their face to have been done in the exercise of their agency, but that the liability of the principal depends upon these facts: 1. That the act was done in the exercise of, and 2. Within the limits of, the delegated power.

In the case at bar the order on *Jewell* was made payable to *Baker* as cashier of the bank, and it is so recited in the agreement, in which it is stipulated that the stock is held in trust by *Baker* for the benefit of the bank, as a security for the payment of the order. The character of this transaction is not, upon the face of the instrument, left doubtful, but it is apparent that the agreement is with the bank and not with *Baker.*

I think the court below committed no error.

*C. Baker,* for appellant.

*J. G. Jones* and *C. Denby,* for appellee.