## JOHN EMSLIE v. CITY OF LEAVENWORTH.

1. PLEADING; *Petition; Executed Contract.* After full performance by the plaintiff of the terms of an express contract, and when nothing remains unexecuted but the defendant's obligation to pay, the former may frame his cause of action upon the express stipulation of the contract, or he may rely upon the implied promise to make such payment, and to that end may resort to a petition identical with the ancient common counts.

2. ——— In the latter case, notwithstanding the petition presents but a claim for the value of the work done, resort may be had to the contract as conclusive evidence of such value.

3. ——— So also, if changes are made by mutual consent from the original plan, the contract controls so far as it can be traced.

### *Error from Leavenworth District Court.*

ALL necessary facts and proceedings are sufficiently stated in the subjoined opinion.    The district court, at February Term 1874, gave judgment in favor of *Emslie*, plaintiff, for $250.    He claimed in his petition the sum of $6,444.25, and interest; and now complains that the judgment rendered was too small, and he brings the record here for review.

*Clough & Wheat*, for plaintiff:

The district court held, because the petition was not drawn upon the contract mentioned in the answer, that although the city in its answer set up the contract in *hæc verba* between itself and Bullen, and the assignment of said contract by

Bullen to plaintiff of the masonry portion of said contract, and the city engineer's assent to such assignment, none of which were denied in the reply, and that whatever work was done by plaintiff, was done under that contract, yet the contract had nothing whatever to do with the case, and the city was not bound by it. It also held, that although the original contractor, Bullen, offered and agreed to build the bridge for $5,400 in cash, or $10,800 in five-year bonds, or $14,000 in ten-year bonds, and although the city accepted the proposal of $10,800 in five-year bonds, rather than $5,400 in cash, that for any additional work over and above that provided for by the contract, the plaintiff was bound to give the city credit for all bonds paid to him on extra work as for so much cash. In each proposition the court erred.

1. Where there has been a special contract, the whole of which has been executed on the part of plaintiff, and the time of payment on the other side has passed, a suit may be brought on the special contract, or a general assumpsit may be maintained; and in the last case the measure of damages will be the rate of recompense fixed by the special contract. 2 Wallace, 1–9; 7 Cranch. 299. And to the same effect are, 3 Kas. 373; 14 Grat. 447–455; 7 Wend. 109; 11 Wheat. 237; 9 Peters, 541; 2 Binney, 4; 5 Serg. & R. 19; 4 Gilman, 92; 10 Mass. 287; 19 Pick. 496; 8 Humph. 46; 4 Md. 441, 491; 2 P. A. Browne, 225; 1 Bac. Abr. 380; 1 Bos. & Pul. 397; 12 East, 1; 2 Barn. & Ald. 431; 1 New Rep. 330; Holt, 236; 5 Espinasse, 269; 1 Starkie, 185; 9 Moore, 28.

2. If there has been a special contract which has been altered or deviated from in particulars by common consent, general assumpsit will lie when the work has been performed; and in such case, if the original contract has not been wholly lost sight of in the work as executed, the rates of recompense fixed by it shall be the measure of damages as to those parts in which it can be traced in the performance; and for the *new* or *extra work*, the recovery shall be upon a *quantum meruit:* 2 Smith's Lead. Cases, 42; 4 Wend. 285; 14 Wend.

87; 2 Bay, 401; 1 Littell, 179; 3 J. J. Marsh. 689; 12 La. An. 621; 23 La. An. 624; 11 B. Monroe, 169.

3. If such is the law at common law, it also holds good under the code; 3 Kas. 372; 1 Nash's Pl. & Pr., 4th ed., 123; 3 Sanf. Sup. Ct. 695; 10 How. Pr. 153; 14 B. Monroe, 84; Seney's Ohio Code, 100, notes 1, 5, 6, 21.

4. Extra work is presumed to be done at the same price and on the same terms as the work under the original contract. 2 Pars. Contr. 57; 12 Iredell Law, 82, 282; 4 Comst. 338, 412; 13 Metc. 42; 36 Me. 92.

5. As Bullen assigned that portion of the contract that was for masonry to Emslie, and consented that the city should pay him $7,000 of the contract-price for said work, which assignment was consented to by the city engineer, then such assignment and consent is *prima facie* evidence of the value of the work — and the bid of Bullen is also admissible as evidence, and the court erred in rejecting it. 4 Kas. 482; 5 Kas. 663; 1 Blackf. 325; 19 Ind. 311; 1 Phil. Ev. 184.

6. Now Bullen contracted with the city to do certain work for it, for $10,800 in Leavenworth city bonds, running five years, and drawing seven per cent. per annum interest. A certain proportion of this work he assigned to plaintiff, and for which work thus to be done by plaintiff he was to receive $7,000 of the $10,800 bonds agreed upon between the city and Bullen as the contract-price. To this arrangement the city engineer assented — so that thereafter, as to the part of the contract assigned, plaintiff was subrogated to all the rights that Bullen had, and was subjected to all the liabilities which Bullen had assumed under said contract. One of those rights undoubtedly was to receive pay for any extra work done under said contract at the same price and on the same terms as for the work under the original contract. There is a great difference between agreeing to do certain work at a certain price payable in bonds, and agreeing to do that work at a certain price payable in cash, and after the work is done being forced to receive the pay in bonds at one hundred cents on the

dollar. It is conceded, as we understand, that the city had the authority to let the contract to Bullen in this case for $10,800 payable in bonds, although it was offered the same work and material by the same party for one-half that amount payable in cash; and yet the district court held, and instructed the jury, that if any extra work was done, and that work was paid for in the same sort of bonds as mentioned in the original contract, the plaintiff must give the city credit for the bonds, dollar for dollar, as if they were cash. That is to say — if it were admitted that the work that Emslie did on account of changes and additions was just twice as much as the contract called for, and therefore worth just twice as much as the contract-price, then Emslie would be entitled to the $7,000 bonds as the *contract-price*, and as the extra work was only worth $3,500 in cash, and as he had to receive each dollar of bonds over the contract price as cash, then whenever the city paid him $3,500 more *in bonds* it would have paid him in full. Surely this is neither just, right, nor honest, and cannot, it seems to us, be law.

7. The district court we think erred in the trial of the cause below in two essential particulars: Because the petition was not drawn upon the written contract between Bullen and the city, because it was not·set up in the petition, and the work alleged to be done under it, the court held that the contract had nothing to do with the case; or, to use the exact words of the court, "It is the right of the city, plaintiff having ignored the contract in his petition, to similarly abandon the contract." Second, the court held, and made all the rulings in the trial of the cause on the theory, that all bonds of the city of Leavenworth paid to Emslie over and above the $7,000 bonds mentioned in the assignment by Bullen to Emslie, were paid to him, and received by him, as cash — that Emslie was only entitled to what the work was reasonably worth in cash, and if he received bonds instead of cash, he did so at his own risk and expense, although they were worth only fifty cents on the dollar. We contend that as the city

agreed to pay Bullen $10,800 in bonds for work which he had agreed to do for $5,400 in cash; and as Emslie was subrogated to the rights of Bullen under the contract, so far as the masonry work extended, that for any extra work over and above the contract, Emslie was entitled to pay at the same rate as that agreed to be paid under the contract— that is to say—if paid in bonds of the description mentioned in the contract, he was entitled to twice as many of them as he would have been had he been paid therefor in cash.

*Taylor & Gillpatrick*, for defendant:

1. The court below instructed the jury, "If the jury, from the evidence, believes that the value of the work and masonry done by Emslie does not exceed the sum of $12,916, and that before the institution of this suit the defendant paid to said Emslie in cash and Leavenworth city bonds the sum of $12,916, then you must find for the defendant." The instruction accepts the case as stated by the plaintiff—a civil action for the value of work and labor and materials furnished, independent of any special contract. The court below took the plaintiff at his word. It is settled on principal and authority, "that the nature of the cause of action is determined by the allegations of the petition, or complaint, so that the inquiry need never be extended beyond the first pleading in the suit. Pomeroy on R. 605, § 559; Gould on Pl., ch. 2, §§ 27, 28; ch. 8, §§ 65, 66. The plaintiff claims that his unverified reply is an admission of the contract, so that the answer setting up the contract becomes a part of his cause of action. This is a "departure" in pleading, and obnoxious to all rules. Gould's Pl., ch. 8, §§ 65, 66; 2 Wait's Pr. 442.

2. But if the rule so strenuously insisted on by plaintiff were true, that the contract-price is the rule, so far as it can be traced, then he has no ground of complaint, for in every estimate by the engineer, the amount of the original contract to be paid by the city to plaintiff, as assignee of Bullen, the

contractor-in-chief, $7,000 was stated as certain, and the extra work was fixed at $5,916, making the total amount paid by the defendant, to-wit, $12,916.

The plaintiff however lays his action in general assumpsit, and he is bound by the state of facts set forth in the petition. 2 Smith's Lead. Cases, 6th ed. 51. And yet the plaintiff, in *indebitatus assumpsit*, relies on his right under the *contract.* Misguided by "the confusion and obscurity which exist in the books, in relation to this matter of special and general assumpsits," the plaintiff sought, by the agency of a jury, to recover a large sum for his labor and materials, on a *quantum meruit*, and then under the original contract, to recover double that amount in bonds of the city. We submit that "this is neither just, right, nor honest," and as sufficiently appears from the authorities, cannot be the law.

3. The city authorities had no power to make such a contract. The whole transaction was void. The plaintiff contends that he is entitled to the benefit of the contract as it was made; that is to say, for every dollar's worth of work done, he should receive two dollars in city five-year seven-per-cent. bonds. To this the defendant replies, that such a contract cannot be enforced; nor can it be the rule of damages in this action. Such an agreement is *ultra vires*, and usurious. This, it is submitted, is fatal to the plaintiff's pretensions in the premises. He was bound to know the powers of the municipality with which he dealt. Such a contract was prohibited by law. Charter of 1868, sec. 37; 19 Iowa, 199; 4 Cent. Law Jour. 247, 390; 10 Cal. 278; 2 Dillon Ct. Ct. 493; 22 Iowa, 595; 25 Iowa, 447.

4. As to the testimony rejected, little need be said. It was rejected as incompetent, and as evidence, it was so. The court held that the city could not dispose of its bonds at fifty cents, and hence any estimate made by the engineer, under the terms of that contract, was incompetent. Then it was not responsive to the issues in the case. The plaintiff, in his petition, ignored the contract, and yet it is insisted that the contract shall be the rule of estimate and payment. The

city could, but did not, rely on the contract in fixing the maximum of the recovery. The transcript shows that the estimate offered in evidence was excluded under the objection, "that it did not tend to prove the plaintiff's case," and the court said it may be competent in rebuttal, but was not so offered. The ruling was consistent with the general view the court took of the case, that the contract was ignored by both parties.

The court below may have given erroneous instructions in some particulars, yet we think complete justice has been done; that the verdict is conclusive. The jury evidently thought the plaintiff had been paid in full, except the trifling sum found due, and the judgment should not be reversed. The plaintiff can have sustained no injury by erroneous instructions, and the course taken at the trial, as he could in no event recover on the facts in the case. This action was commenced in August 1871 — the facts occurring in 1868. It was tried in February 1874. And now, after three successive changes in the legal representatives of defendant, and when the facts have grown dim in the memory of all, the plaintiff comes fishing, and throws his bait to this honorable court. We submit, that on well-established principles he is entitled to no relief.

The opinion of the court was delivered by

BREWER, J.: In February 1868, the city of Leavenworth made a contract with J. A. Bullen to build a bridge on Main street, across Three-mile creek, for $10,800, payable in five-

<span style="font-variant: small-caps">Statement of facts.</span>        year bonds. The excavation and mason work therein was, with the consent of the city, assigned to the plaintiff. The bridge was built, and accepted by the city. Changes were made by the city engineer in the plans and specifications, which largely increased the amount of the masonry and excavation. On a final report of the city engineer the city paid plaintiff $12,900, in five-year bonds, and sixteen dollars in cash. Plaintiff claiming that he was entitled to some six or seven thousand dollars more, brought

this action. In his petition he did not count on the contract, but alleged in the form of one of the old common counts a general indebtedness for work and labor. The city answered setting up the contract, and assignment, and alleging that all work was done under the contract, and fully paid for. An unverified reply was filed.

The district court, upon the trial, ruled substantially, that the contract was outside the case; that the plaintiff by the form of his petition had abandoned the contract, and was suing for the value of the work done, and generally limited the testimony to the quantity of work, its acceptance, and value. The instructions followed these rulings, and discarded the contract. In this was error. Whatever criticism may be placed upon such pleadings, as involving a departure from the true spirit of code pleading, they are almost uniformly sustained by the code authorities. It is said by Pomeroy in his work on Remedies and Remedial Rights, section 543: "Not only have the courts in this manner sanctioned the use of the common counts as appropriate modes of setting forth the plaintiff's cause of action; they have also held that another rule of the old practice is still retained by the codes. The rule thus declared to be in force is the following: When the plaintiff has entered into an express contract with the defendant, and has fully performed on his part, so that nothing remains unexecuted but the defendant's obligation to pay, he may if he please, sue upon the defendant's implied promise to make such payment, rather than upon the express undertaking of the original contract; and to that end he may resort to a complaint or petition identical with the ancient common counts." In support of this he cites in a note, a large number of authorities. In the case of *Columbia Bank v. Patterson's Adm'rs*, 7 Cranch, 299, the supreme court of the U. S., by Story, J., says: "We take it to be incontrovertibly settled, that *indebitatus assumpsit* will lie to recover the stipulated price due on a special contract, not under seal, where the contract has been

1. Petition; common counts.

37—20 KAS.

completely executed; and that it is not in such case neces-
sary to declare upon the special agreement. In the case be-
fore the court, we have no doubt that *indebitatus assumpsit*
was a proper form of action to recover, as well for the work

2. Contract, con-
trols price.
done, *under the contract of 1804, as for the extra
work.* It may, therefore, safely be admitted that
where there is a special agreement for building a house, and
some alterations or additions are made, the special agree-
ment shall, notwithstanding, be considered as substituting so
far as it can be traced." And in a later case, *Dermott v.
Jones,* 2 Wall. 1, the same court, by Swayne, J., uses this lan-
guage: "While a special contract remains *executory,* the plain-
tiff must sue upon it. When it has been fully executed
according to its terms, and nothing remains to be done but
the payment of the price, he may sue on the contract, or *in-
debitatus assumpsit,* and rely upon the common counts. In
either case the contract will determine the rights of the par-
ties." And such seems to be the almost unbroken current
of the authorities. So that, though the petition was in form
simply a claim for the value of work done, the plaintiff was
at liberty to introduce the contract, and rely upon its terms
as controlling evidence of value. Not only is this true as to
the work originally specified in the contract, but also as to

3. Extra work.
all extra work, done by mutual consent, so far as
the terms of the contract can be traced. The
rule is thus stated by Sedgwick in his work on the Measure
of Damages, p. 222: "So also, where work is done under a
special agreement at estimated prices, and there is a deviation
from the original plan by the consent of the parties, the con-
tract is made the rule of payment as far as it can be traced,
and for the extra labor the party is entitled to his *quantum
meruit.*"

This error compels a reversal of the judgment, and a new
trial. We do not deem it necessary to consider the other
questions discussed by counsel, for this error involves such a
radical change in the whole scope of the testimony, and the

character of the issues, that perhaps none of those questions may be of any practical importance.

The judgment will be reversed, and the case remanded for a new trial.

HORTON, C. J., concurring.

VALENTINE, J.: I concur in the decision of this case, because I believe that the decision is sustained by all or nearly all of the authorities in other states where they have codes similar to ours; and yet it seems to me that such authorities have gone astray. It seems to me, that the spirit of the code, as well as its express words, requires that a cause of action should be stated by making "a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition." (Code, sec. 87.) And it seems to me, that where a cause of action is founded upon a special contract, and upon special facts and special circumstances, the facts constituting such cause of action—*the real facts*—cannot be stated in ordinary language by using one of the old common-law "common counts." I think that the *real facts* constituting the cause of action should be stated just as they actually occurred, and that to resort to one of the old "common counts" to state a cause of action founded upon a special contract, or special facts, is not to state the *real facts* as they actually occurred, but is virtually to adopt "fictions in pleadings," which have been expressly abolished by the code. (Code, sec. 116.) Therefore, while I concur in the decision because I think the authorities sustain it, yet I must express my regrets that such authorities exist.