FEMALE ORPHAN ASYLUM OF PORTLAND *versus* BARNEWELL

JOHNSON.

A corporation empowered to make contracts in writing, are not thereby authorized to confer that power upon one of their officers to contract in their behalf.

By a special act of the legislature of 1841, chap. 105, the Female Orphan Asylum of Portland, by their managers, were authorized to bind to service children under their control. It was held that a contract signed by defendant on his part, and "Mary B. Storer in behalf of the Female Orphan Asylum of Portland," was not authorized by the act.

EXCEPTIONS to the ruling of RICE, J., at *Nisi Prius.*

This is an action on a plea of covenant broken, for the care, support, and teaching of Jane Lenham, an indented apprentice.

The defendant pleaded "*non est factum,*" on which issue was joined. Defendant also filed a brief statement:

1st. That he never covenanted and agreed with the plaintiff corporation, as alleged in their declaration.

2d. That the instrument declared upon purports to be an indenture of apprenticeship, in two parts; that the same was never executed by the plaintiff corporation in proper manner, so as to make the same binding on said corporation, or that could be in any way enforced, and that the same is therefore not binding on the defendant.

The execution of the instrument is as follows:

BARNEWELL JOHNSON, *Seal.*

MARY B. STORER, *Seal,*

In behalf of the Managers of the Female Orphan Asylum of Portland.

To prove the issue on the part of the plaintiff, a book was offered in evidence, purporting to be the records of the Female Orphan Asylum of Portland, which showed the organization of the society under the act of incorporation, the adoption of the constitution and by-laws previously prepared, and the choice of Mrs. Mary B. Storer as Secretary, the elec-

tion and choice of managers for the year which includes date and execution of indenture. Also election of managers for the year 1843, in which Jane Lenham was received into the Asylum; election and choice of managers for the year commencing October, 1844, and ending October, 1845, and the choice of Mary B. Storer as Secretary for the same time; authority of Mary B. Storer as Secretary, to execute bonds and indentures for and on behalf of the board of managers; election of Mary B. Storer as Secretary, and the election of board of managers for 1843-4; vote to receive Jane Lenham into the Asylum in September, 1844; the acceptance of James Lenham's surrender of his daughter, Jane Lenham, to the Asylum; election of Mary B. Storer as Secretary for 1845-6, including the time of date of indenture; vote that Jane Lenham be bound apprentice to Mr. Johnson, the defendant. The plaintiff also offered a paper signed James Lenham, surrendering his daughter, Jane Lenham, to the Female Orphan Asylum of Portland. The plaintiff then offered in evidence a paper purporting to be an indenture of apprenticeship, signed, sealed and delivered by Barnewell Johnson and "Mary B. Storer in behalf of the managers of the Female Orphan Asylum, Portland." The signatures of Barnewell Johnson and Mary B. Storer were admitted to be their signatures, but its admission as evidence was objected to by counsel for defendant, and excluded by the court.

No other or further evidence being offered by the plaintiff in support of the action, the judge ordered a nonsuit.

To which ruling and order of nonsuit the plaintiff excepts.

*S. & D. W. Fessenden,* counsel for plaintiffs.

As to the power to authorize the secretary to execute the indentures for the managers; referred to the 20th vol. of Maine R., 45, Garland v. Reynolds, and said that in that case the committee appointed one of their number to act as treasurer, in fact to act for the whole committee. The town ratified the doings of the committee by recognizing the acts of the treasurer. So in this case, the corporation by their acts

have adopted as their own all that their board of managers have done.

*Fessenden & Butler*, argued for defendant,

Action is in the name of the corporation. The indenture offered in evidence and which was the foundation of the suit, was properly excluded.

1. The plaintiff corporation is not a party to it, and the instrument does not *purport* that said corporation is a party. It does not purport to be executed in the name of the corporation by any agent, nor in the name of any agent for the corporation.

The *managers* of the Female Orphan Asylum, of Portland, are, and purport to be the parties on the one part, and defendant on the other, and if any cause of action has arisen thereon, said managers must bring the suit ex officio.

2. If the indenture can in any way be considered as purporting to be the deed of the corporation, still no authority is shown to have been given to the managers to execute the same in the name of the corporation.

And if any such authority was given, still they have not properly executed said authority. They could not delegate it to their secretary. It should have been executed in behalf of the corportion by the managers themselves, or a majority of them.

The alteration or addition in the by-laws, referred to by plaintiff, empowering the secretary to execute indentures in behalf of the managers, is not valid, inasmuch as by a former by-law, (the fifth, referred to by defendant,) no alteration in, or addition to, the by-laws, could be made without the concurrence of two thirds of the managers, at a special meeting, called four days previous.

CUTTING J. The plaintiffs, on February 18, 1828, by a special act of the Legislature, chap. 534, were constituted a body politic and corporate by the name of the " Female Orphan Asylum of Portland," with power to prosecute and

defend suits at law; to have and use a common seal; to make and establish any by-laws for the management of their affairs, not repugnant to the laws of the state; to take and hold any estate, real or personal, for the purpose of supporting, instructing and employing female children, the first attention to be given to orphans; and with all the powers and privileges usually granted to other societies instituted for purposes of charity and beneficence.

And on February 27, 1841, by an additional act, chap. 105, they were authorized to put and place out at service any of the children under their care and management, at such age as may be deemed advisable, with any suitable master or mistress, and on such terms and conditions as may be deemed reasonable, until such child shall arrive at eighteen years of age, or be married; that the master or mistress, with whom any such child has been or may be placed, in manner aforesaid, shall have reasonable control and power over her, agreeably to the terms and conditions prescribed and agreed upon, *in writing, interchanged, or to be interchanged by and between the said Female Orphan Asylum, by their managers, and said master or mistress.*

Upon an inspection of the records, which were produced at the trial and received as evidence, it appears that the society was duly organized and went into operation under the original act; that the society consisted of such ladies "as had subscribed and paid a sum of not less than two dollars annually," who were to meet "annually on the second Tuesday of October, for the purpose of electing by ballot a treasurer and a board to consist of fifteen managers, which board shall choose from among themselves a first and second directress, a secretary and an assistant secretary, if necessary; and they shall have power to fill their own vacancies. *Not less than five shall constitute a quorum for transacting business.*"

Under this organization the society was authorized to support, instruct and employ female children, but not to bind them out at service; hence the necessity of obtaining the

additional act for that purpose. And it was in pursuance of this subsequent act, that the bond now in suit was given, the execution of which having been admitted, it was offered in evidence, objected to by counsel for defendant, and excluded by the court; as to the correctness of which ruling, the principal question arises; for if correct, inasmuch as the bond was the foundation of the plaintiffs' claim, the nonsuit was subsequently properly ordered. It therefore becomes our duty to examine the bond, to see whether it be in accordance with the provisions of the foregoing statute, for by that act alone it must stand or fall, since it is an instrument unknown to the common law.

That portion of the bond or indenture, material for our consideration, is as follows:—" This indenture witnesseth, that we, the managers of the Female Orphan Asylum of Portland, in the State of Maine, have put and placed," &c. " In testimony whereof, we the said parties have hereunto interchangeably set our hands and seals," &c. Signed by the defendant and " *Mary B. Storer, in behalf of the managers of the Female Orphan Asylum of Portland,*" to whose signatures are affixed their individual seals. In the first place it will be noticed, that " we the managers," (and not the society by their managers) have, &c., and that the instrument bears not the corporate seal; consequently at common law, had the parties been reversed, no action for covenant broken could have been maintained against these plaintiffs. Stinchfield v. Little, 1 Maine R., 231; Cram v. Bangor House Proprietory, 12 Maine R., 354; Tippets v. Walker, 4 Mass., 595; Bank of Columbia v. Patterson, 7 Cranch, 299; Randall v. Van Vechten, 19 Johns., 60. How far the R. S., chap. 91, sec. 14, may change the law as settled by these decisions, it is unnecessary now to consider. Those cases, or many of them, while they decide that no action for a breach of *covenant* will lie, also decide that *assumpsit* may, and that the deed is receivable in evidence under that issue. Now in this case, inasmuch as the instrument declared on has the signature of the defendant with his seal affixed, and consequent-

ly is his deed, it is difficult to perceive, by parity of reason, why *covenant broken,* instead of *assumpsit,* may not be maintained.

But the defense presents another point, which, notwithstanding the remarks of the plaintiffs' counsel, very justly eulogistic of their clients' acts and intentions, we feel compelled to sustain; which is, that the managers had no power under the act to delegate to another the trust conferred only upon themselves, or in other words, that "delegated power cannot be delegated."

In Stoughton v. Baker, 4 Mass., 530, the court say, that "the authority given to the committee is, by the terms of the resolve, to be exercised by them or a major part of them. The exercise of this authority is personal, and cannot be delegated." The same doctrine has been reiterated in Kupper v. Augusta, 12 Mass., 185; Tippets v. Walker, 4 Mass., 595; Emerson v. Prov. Hat Manuf. Co., 12 Mass., 237; Shankland v. Corp. of Washington, 5 Pet., 390; Brewster v. Hobert, 15 Pick, 306; Lyon v. Jerome, 26 Wend, 485.

It is contended by the plaintiff's counsel that by force of the following by-law, viz: "All bonds or indentures given on receiving children into or placing them out from the Asylum, shall be executed in behalf of the board by their secretary," gave Mary B. Storer, their secretary, legal authority to execute the deed in the manner it was executed. It appears from the records introduced, that the foregoing vote or by-law, (immaterial perhaps which,) was adopted by the managers and not by the corporation, who only are authorized to make and establish by-laws; but, if established by either, it would be repugnant to the act, which become a law of the state. By the additional act it was only a contract in writing and *signed by the managers,* which gave the master the control over the child. Any contract executed in any other manner than that prescribed by statute, would not be binding and could not confer any authority upon the master.

*Exceptions overruled, nonsuit confirmed.*