HAIGHT *vs.* SAHLER and others.

Where the defendants, having been duly appointed by a corporation its building committee, and authorized to contract for materials for erecting a building in which to conduct its business, entered into a written contract with the plaintiff, under their respective hands and seals, describing themselves therein as "building committee," and signing it as such, for the purchase of a quantity of brick; *Held* that the corporation was liable, on the contract, notwithstanding the *seals* of the defendants were affixed thereto.

And, the defendants having shown that they were fully authorized by the corporation, in fact, *a priori*, to make the contract, and that after it was so made, the corporation ratified it, by making several payments thereon, and otherwise; *Held also*, that the defendants were not liable personally, on the contract.

APPEAL from a judgment entered upon the report of a referee. The action was brought upon articles of agreement made between the parties, under seal, and was for the recovery of the money therein agreed to be paid by the defendants. The action was referred to a referee, who, by his report, found as matter of fact, that on or about the 3d day of September, 1855, the defendants entered into a contract with the plaintiff, under the respective hands and seals of the parties, in these words:

"This agreement, made the third day of September, one thousand eight hundred and fifty-five, between John Haight, of the town of Arcadia, in Wayne county, and state of New York, of the one part, and John P. Sahler, Robert Robinson and Andrew O. Lamoreaux, building committee, appointed by the trustees of the Wayne County Collegiate Institute, located in the village of Newark, of the other part, witnesseth: that the said John Haight, for the consideration hereinafter mentioned, agrees to sell to the said John P. Sahler, Robert Robinson and Andrew O. Lamoreaux, building committee, two hundred and fifty thousand bricks, manufactured of suitable and proper materials, and to be delivered between this date and the first of November next, and all the bricks manufactured by the said John Haight this season, hereafter, up to the number of two hundred and fifty thousand, besides the first mentioned

---
Haight *v.* Sahler.
---

two hundred and fifty thousand bricks; all of said bricks shall be of good quality and suitable for its intended purposes, such as the said John P. Sahler, Robert Robinson and Andrew O. Lamoreaux, or their successors or assigns, may accept, for putting in the walls of the building of said collegiate institute, and to deliver said number of bricks to the said building committee, (or agents in their employ,) in the brick yard of the said John Haight, in the village of Newark, in such amount and numbers of bricks, and at such times, as the said John P. Sahler, Robert Robinson and Andrew O. Lamoreaux, building committee, or their successors, shall from time to time direct and require of the said John Haight. In consideration whereof, the said John P. Sahler, Robert Robinson and Andrew O. Lamoreaux, building committee, or their successors, agree to pay to the said John Haight the sum of four dollars and twenty-five cents for each and every thousand of said brick, upon the final and complete delivery of every hundred thousand thereof of the first named two hundred and fifty thousand bricks, and the same for the next two hundred and fifty thousand bricks, upon the final and complete delivery thereof, or so much of the last mentioned number as the said John Haight can manufacture or deliver the present season, besides the first named two hundred and fifty thousand.

In witness whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written.

JOHN HAIGHT,          [L. S.]
JOHN P. SAHLER,      [L. S.]  ⎫  *Building*
ROBERT ROBINSON,  [L. S.]  ⎬  *Committee.*
A. O. LAMOREAUX,   [L. S.]  ⎭

Signed, sealed and delivered in the  ⎞
presence of WILLIAM R. PARKHURST." ⎠

That in pursuance of the said contract, the plaintiff delivered to the defendants, or persons in their employ, for the purpose of the erection of a building for the Wayne County Collegiate Institute, between the date of the contract and the

8th day of December, 1855, brick to the amount of one hundred and ten thousand; that six thousand of said brick were of a poor quality, not suitable to be put into the building; that six thousand six hundred and fifty were sold by the mason in charge of the building, after the brick were delivered by the plaintiff, and that the balance of the said brick were used in and about the erection of the said building; that the brick were delivered as fast as they were required by the defendants; that all brick required were delivered, and that the plaintiff was ordered by the defendants to deliver no more brick, by reason that the erection of the said building was stopped in December, 1855; that the price agreed upon for said brick was $4.25 per thousand, making the sum to be paid for the brick $442, of which sum $183 was paid prior to December 15th, 1855. The referee thereupon decided as matter of law, that the plaintiff would be entitled to recover of the defendants the sum of $259, with interest thereon from the 15th day of December, 1855, to the 15th day of October, 1858, being in the whole $310.37, if the defendants were personally liable. But he further decided as matter of fact, that before and on the 18th day of August, 1855, and until after the sale and delivery of the brick, the Wayne County Collegiate Institute was an academy duly incorporated and organized by the election of trustees, and by a charter or instrument sanctioning such incorporation, granted by the regents of the university; that prior to the 18th day of August, 1855, meetings of the trustees of said Wayne County Collegiate Institute had been held from time to time; that said Wayne County Collegiate Institute was in possession of and owned the lands upon which they proposed to erect a building for such academy; that at a meeting of the trustees on the 18th day of August, 1855, the defendants were appointed a building committee for the purpose of the erection of said building and making the necessary contracts therefor; that the contract for brick hereinbefore set forth, was made by the defendants as such committee; that they

were duly authorized to make such contract as such committee, and that the contract was ratified by the action of the trustees, by payments toward the brick furnished under the contract, and by the use of the materials in the building, and that it was not the intention of the parties, as appeared from the face of the contract, and the capacity in which the defendants acted, that they should become personally liable. The referee held that the case of *Randall* v. *Van Vechten* (19 *John.* 60) applied to this, and that he was bound by it. He therefore decided as matter of law, that the defendants were not personally liable, and that they were entitled to judgment against the plaintiff for their costs.

Judgment having been entered upon this report, in favor of the defendants, the plaintiff appealed.

*S. K. Williams,* for the plaintiff.

*T. Hastings,* for the defendant.

*By the Court,* E. DARWIN SMITH, J. The referee by whom this cause was tried, has put his decision expressly on the case of *Randall* v. *Van Vechten and others,* (19 *John.* 60.) In that case the defendants were a committee of a municipal corporation, and contracted for work to be done for the benefit of their principals, the city of Albany, by agreement under their private seals. In this case, the committee have contracted in like manner for a religious corporation. There is nothing, I think, in the point that the defendants, in the case of *Randall* v. *Van Vechten,* were *public agents.* They were agents of a corporation just as liable to be sued as any private corporation. The irresponsibility which protects public officers, and other agents of government, acting within the scope of their authority, does not apply in favor of the agents of such corporations. Persons assuming to contract as agents for corporations, as well as for individuals, must see to it that their principals are legally bound by their acts ; otherwise the

law holds them individually responsible. (4 *Mass. Rep.* 595. *White* v. *Skinner,* 13 *John.* 307. *Story on Agency,* §§ 185 and 204. *Meech* v. *Smith,* 7 *Wend.* 315. *Paley on Agency,* 386.) This is a cardinal and fundamental rule in the law of agency. The contract in this case, as much as that in the case of *Randall* v. *Van Vechten,* it is perfectly evident, was in fact made exclusively for the benefit of the corporation. It appears upon its face that the 250,000 brick, which the plaintiff was to manufacture and deliver under the contract, " were to be of good quality, and suitable for its intended purpose, such as the defendants, or their *successors* or assigns might accept, for *putting in the walls of the building of said collegiate institute,*" of which the defendants are therein described as the *building committee.* It also appears in this case—in which respect it differs from that of *Randall* v. *Van Vechten*—that the defendants, before the making of the contract, were expressly authorized by the resolution, duly passed by the board of trustees of the corporation, " to contract for the furnishing the materials and doing the work necessary to be furnished and done in erecting the said institution, and also in superintending the building thereof." If this contract were by parol, no doubt, I think, would exist, or question be made, in respect to its being a valid and binding contract of the *corporation.* The fact that the defendants sealed it with their seals creates all the difficulty in the case. As a *deed,* it is not the deed of the corporation, confessedly. It is not signed by the appropriate officers of the corporation, and is not under the corporate seal. An action of covenant, according to the former names and forms of actions, clearly would not lie on it against the corporation. Strict principle I think would require, in the practical application of the rule, that the agent must see to it, in making his contract, that he binds his principal—that he binds such principal in the manner and form in which he contracts, so that the other party to the contract may have his appropriate remedy by action in form on the contract itself. But this rule has been departed

Haight *v.* Sahler.

from too long, and in too many cases, for any but a court of ultimate review and of final decision to return to first principles. The case of *Randall* v. *Van Vechten* is a distinct departure from this principle. It holds that *assumpsit* lay against the principal in that case, on the contract. This case was distinctly approved, and its doctrine in this particular reasserted in *Dubois* v. *The Delaware and Hudson Canal Company*, (4 *Wend.* 288.) In that case the contract was also under seal. Judge Marcy says : " The contract was not binding on Warts (the agent) individually, it appearing that he had authority from the defendants to make it. Although it was under the seal of the defendants' agent, his seal was not the seal of the corporation, and the proper form of action against the defendant was *assumpsit*." The principle of the case of *Randall* v. *Van Vechten* is also expressly approved in the case of *Brockway* v. *Allen*, (17 *Wend.* 40 ;) also in *Gale* v. *Nixon*, (6 *Cowen*, 448 ;) *Hicks* v. *Hinde*, (9 *Barb.* 529 ;) *Stanton* v. *Camp*, (4 *id.* 276 ;) and 1 *Kern.* 200. And the same principle is asserted in 7 *Cranch*, 299, and 2 *Pick.* 352. The principle upon which these cases all rest is, that the contract in question was in fact authorized by the principal, and that a seal was unnecessary to its validity. (22 *Wend.* 335. *Lawrence* v. *Taylor*, 5 *Hill*, 107. 19 *N. Y. Rep.* 315.) This question is very elaborately discussed, and all the authorities on the subject examined, by Judge Paige in *Worrall* v. *Munn*, (1 *Selden*, 229,) in which the case of *Randall* v. *Van Vechten* is also cited with approval. In *Ford* v. *Williams*, (3 *Kern.* 585,) the same principle is reasserted. In that case the defendant, having an authority by parol, executed a bond of indemnity under seal. The court of appeals held the bond valid as a simple contract. Upon the authority of these cases, the Wayne County Collegiate Institute was clearly liable on the contract described in the complaint in this action, notwithstanding the seals of the defendants were affixed thereto. They were superfluous, not in any way essential to the validity of the contract. Prima facie the defendants were lia-

ble personally on the contract, as was the case in *Taft* v. *Brewster*, (9 *John.* 334;) *White* v. *Skinner*, (13 *id.* 310;) and *Brockway* v. *Allen*, (17 *Wend.* 40;) and in many other similar cases. But the defendants have shown that they were fully authorized in fact to make the contract *a priori*, and that it was ratified in fact by the corporation by making several payments thereon, and otherwise. It is very obviously true, that an agent may make himself personally liable on a contract made for the benefit of the principal, and this he will do if he contracts in his own name, and his principal is unknown. But when the relation of principal and agent is known to exist, and the fact that the agent is acting solely for the benefit of such principal, the agent will not be bound unless the credit is given to him expressly and exclusively, and it was clearly his intention to bind himself personally. (*Stanton* v. *Camp*, 4 *Barb.* 275. *La Farge* v. *Kneeland*, 7 *Cowen*, 456. *Story on Agency*, § 261. *Bradford* v. *Eastburn*, 2 *Wash. C. C. Rep.* 219.) The defendants in this case clearly did not indend to incur any personal liability. They describe themselves as a *building committee*, and covenant in that capacity, and sign by that name. The plaintiff has a complete remedy upon this contract for whatever is due him thereon. The judgment therefore should be affirmed.

[Monroe General Term, December 5, 1859. *T. R. Strong, Welles* and *Smith*, Justices.]