# W. M. GIBSON *et al.* COMMISSIONERS OF CROWN

## LANDS *vs.* J. H. SOPER *et al.*

### Appeal from Decision of McCully, J.

### April Term, 1885.

McCully and Austin, JJ.; Judd, C. J., absent.

Public officers, who make contracts in behalf of the public, are not personally liable.

Commissioners of Crown Lands are public officers.

A judgment against the Commissioners, for damages for breach of covenants in a lease made by them, cannot be enforced against their personal estate, but must be realized out of funds in their hands as Commissioners.

Decree affirmed.

### Opinion of the Court, by Austin, J.

This cause is an appeal in equity from the decision of Judge McCully. The object of the plaintiffs is to enjoin the collection of a judgment in favor of Bishop & Co. against the plaintiffs, Crown Land Commissioners, upon an execution which the defendant threatens to levy upon the individual property of one of the plaintiffs, C. H. Judd.

The defendants claim that the plaintiffs are individually liable, and the plaintiffs deny it.

The judgment sought to be restrained was for the breach of a

covenant for quiet enjoyment, contained in a lease between the Commissioners of Crown Lands of the first part, and H. E. Whitney and J. W. Robertson, of the firm of Whitney & Robertson, of the second part. The lease recites that "they, the said party of the first part, by virtue of the authority in them vested by the Act to relieve the Royal domain from encumbrances, and to render the same unalienable, approved January 3, 1865, have and do lease certain lands in Honolulu to the party of the second part, for the term of ten years from January 1, 1881, at the yearly rental of $800, payable quarterly, and all taxes; which rent the parties of the second part covenant that they will pay to the parties of the first part and their successors in office; and the parties of the first part further, for themselves and their successors in office, covenant for the quiet enjoyment of the land leased by the party of the second part, and in case of breach of any of the conditions of said lease by the party of the second part, they covenant that the party of the first part and their successors in office may re-enter." In the body of the lease the names of the Commissioners are not mentioned, and do not appear. The lease is signed by C. H. Judd, Commissioner and Land Agent; by Whitney & Robertson, by H. E. Whitney, and by H. A. P. Carter and J. S. Walker, Commissioners of Crown Lands.

The Act above referred to creates the office of the "Commissioners of Crown Lands." Sec. 2 declares that the lands by the Act of June 7, 1848, declared to be the private lands of His Majesty Kamehameha III, and which have descended to Kamehameha V, "shall be henceforth unalienable, and shall descend to the heirs and successors of the Hawaiian Crown forever," and that the said lands thereafter cannot be leased for over thirty years. Sec. 4 provides that the "Commissioners of Crown Lands shall have full power and authority to make good and valid leases of the said lands for any number of years not exceeding thirty; but in no case shall it be lawful to collect the rents on the same for more than one year in advance, or to receive anything in the nature of a bonus for signing the said lease, and all the rents, profits and emoluments derived from the said lands, after deducting the necessary and proper expenses of managing the same, shall be for the use and benefit of the reigning Sovereign, and

payable by the said Commissioners to the order of the King, ex-
cept when a minor," and then invested as the Legislature shall
direct for his benefit; and except as provided by Sec. 5, which is
now obsolete. Sec. 6 provides for the appointment by the King
of the Board of Commissioners of Crown Lands, to consist of three
persons, two of whom shall be from the King's Cabinet, and serve
without any remuneration, and the other shall act as land agent,
and shall be paid out of the revenues of the said lands such sum
as may be agreed by His Majesty the King.

The action is brought by Bishop & Co. against C. H. Judd, W.
M. Gibson and J. M. Kapena, Commissioners of Crown Lands,
and counts on the lease above quoted from, and avers that the
defendants are successors in office of the lessors therein named,
and that said lessors covenanted by their successors in office,
whereby these defendants are bound, for a breach of covenant, all
forfeiture for a breach thereof having been waived by these de-
fendants. After trial and verdict for plaintiff on December 1,
1884, judgment was entered that plaintiffs recover of said de-
fendants $8,000 and costs. See *ante*, p. 242.

From the law and facts as above detailed, there can be no
doubt that the defendants are officers appointed by His Majesty
to perform their duties as Crown Land Commissioners, which are
specifically provided for by law, and they are, and become thereby,
public officers. " One standing and acting in a public capacity,
who makes a contract in behalf of the public, is not personally
liable." *Simons vs. Hearding*, 23 Pick., 120; *Macbeath vs. Hal-
dimand*, 1 T. R., 172; *Freeman vs. Otis*, 9 Mass. 272; *Fulham vs.
West Brookfield*, 9 Allen, 1.

The fact that the funds are devoted specially to the use of His
Majesty makes the Commissioners no less public officers. They
become and are the agents of the Government to manage the
property for the maintaining of the Royal state and dignity, and
the Legislature assumes and the King consents to take away the
right of alienation of the land forever.

In the cases cited, however, it is well settled that if the public
agent, by his interference, prevents the remedy against the Gov-
ernment, he makes himself answerable, as if he engaged to pay
expressly in his own name.

48

If we try the case at bar by this rule, we find no personal agreement or any misconduct on the part of these plaintiffs which renders them personally liable. They contract under the name which the appointment under the law gives them, that of " Commissioners of Crown Lands," and refer to that law for their authority, and contract for themselves and their successors, and execute only the leases for the time and on the terms which the law authorizes, and directs and requires them to do. The covenant on which they are sued is a usual and proper covenant, and does not bind them personally but officially; and their individual property cannot be taken on the execution issued herein.

Had the plaintiffs given a personal lease it would have been void under the law, and the lessees would have obtained no right under it save to sue at once the defendants personally for damages for a breach of contract. The evidence is plain that the lessees never intended to rely on the personal security of the plaintiffs or their predecessors.

In *Macbeath vs. Haldimand*, 1 T. R., 181, above cited, the Court say that "the fund out of which the plaintiff was to be paid was the Treasury." In ordinary cases of the proper action of public officers in contracts, the fund from which payment is to be sought is the Government Treasury. It is not so in this case. Here, by the appropriation of the Legislature, a large property is set apart to be leased for the benefit of His Majesty, and the fund arising therefrom, after deducting the necessary and proper expenses of managing the same, shall be paid over to the order of the King. The act requires that the leases shall be made and the fund shall be so devoted. The covenants in those leases are their necessary accompaniments, and the damages for their breach are a lien upon the funds arising from their execution in the hands of the Commissioners. The Legislature so intended, and Kamehameha V consented to it, and his present Majesty is bound by it.

Having the fund arising from the leases, His Majesty must bear the burthen which comes from the breach of their covenants. If it were understood that such covenants could not be enforced, the proceeds of the leasing of Crown Lands would be much diminished.

The payment of the damages in this case must be made out of those funds as they are now or from time to time come into the hands of the Crown Commissioners, the defendants. Such payment is part of the "necessary and proper expenses of managing" the said land, and must be paid out of the fund. If such funds should be or hereafter come into the hands of said defendants, to the extent of the money so secured, they would be liable as for money had and received.

See *Freeman vs. Otis*, 9 Mass., 272.

The liability of the fund in these cases is analogous to that of towns and school districts in Massachusetts and New York, of municipalities, of boards of supervisors, of the funds of estates in the hands of trustees and personal representatives, in the absence of misconduct or of personal agreement to pay. The liability of trustees and administrators on their personal agreements in matters of the estate or trust arises justly, because, having the estate or property in hand, it is their own fault if they agree to more than is warranted. Many such cases are cited by the defendants' counsel, but are not in point.

See *Cronan vs. Cotting*, 99 Mass., 334.

The judgment entered is against the fund, either by direct action against the town or city or county, or by judgment against the agent, to touch only the fund in the agent's hands.

See *Fulham vs. West Brookfield*, 9 Allen, 1 ; *Eaton vs. Bell*, 5 B. & Ald., 34 ; *Atkin vs. Sawyer*, 1 Pick., 351 ; *Todd vs. Birdsall*, Cowp., 260 ; *Rumford vs. Wood*, 13 Mass., 192 ; *Duntz vs. Duntz*, 44 Barb., 459 ; *Haight vs. Sahel*, 30 Barb., 218 ; *Conrad vs. Ithaca*, 16 N. Y., 158 ; *People vs. Van Vechton*, 16 Johns, 59 ; *Uthwatt vs. Elkins*, 13 M. & W., 770 ; *Furnivall vs. Coombes*, 5 M. & G., 736.

The last two cases are relied on specially by defendants' counsel, but are not in point, for the agents failed to bind those whom they assumed to represent.

See also *Richardson vs. Harding*, 2 Hawn, 433.

To prevent any question, though scarcely necessary, we think the judgment should be amended by adding thereto the words, "to be collected out of the funds now in the hands, or which may hereafter come into the hands, of the defendants as Commission-

ers of Crown Lands." As shown in the opinion below, this can be done upon motion in the Supreme Court.

The decree of the Court below is affirmed.

*Attorney-General Neumann,* for plaintiffs.

*A. S. Hartwell,* for defendants.

Honolulu, June 12, 1885.