SAXTON *et al. v.* TEXAS, S. F. & N. R. Co.

(*Supreme Court of New Mexico.* January Term, 1888.)

CORPORATIONS—CONTRACTS—SEAL OF OFFICER—ASSUMPSIT.

Under Comp. Laws N. M. §§ 2623, 2664, relating to "corporations," the governing board of directors alone can alter the common seal of the company, and adopt a new one. The scroll or private seal of the chief engineer of a railroad corporation of that territory, affixed to a grading contract, is, therefore, not the seal of the company, and the contract is not a specialty, and *assumpsit* will lie against the company for its breach.

Error to district court, Santa Fe county.

*Assumpsit* by Lionel D. Saxton *et al.*, plaintiffs in error, to recover damages for breach of contract by the Texas, Santa Fe & Northern Railroad Company, defendant in error.

HENDERSON, J. This action was brought by plaintiffs in error to recover damages alleged to have been sustained by reason of defendant in error preventing the plaintiffs from completing two contracts entered into between L. D. Saxton and the defendant company on the 30th day of May, A. D. 1882. One of these contracts was for driving piles and building bridges, and the other was for track-laying and surfacing. The declaration is in *assumpsit*, by Browne and Saxton, as partners, having a joint interest in the contracts. The first step taken by the defendant company was to file a plea in abatement on account of the joinder of Browne with Saxton, when the contracts were with Saxton alone. At the time of filing the plea in abatement, the defendant filed and propounded to Saxton several interrogatories calling for full and explicit answers concerning Browne's interest in the contracts, when and how acquired, and whether as partner or in any other way. Saxton answered, disclosing Browne's equal interest with himself as a partner, although not named in the contracts. Thereafter the plea in abatement was overruled, and the defendant demurred to the declaration, and insisted, among other causes, that the instruments sued on were sealed, or specialties, and that *assumpsit* would not lie. The demurrer was overruled. Defendant pleaded over the general issue and a special plea, to which there was, respectively, issue joined to the first, and a replication to the second, denying the facts stated to which issue was taken. A jury was impaneled, and the plaintiffs in error offered in evidence the original contracts, copies of which had been filed as exhibits to the declarations. To the introduction of these contracts the defendant in error objected, and the court sustained said objection, and excluded said contracts from the jury. The plaintiffs excepted to the ruling of the court at the time. The plaintiffs offering no other evidence, the court instructed the jury to find for the defendant, which was accordingly done. Plaintiffs moved for a new trial and in arrest of judgment. The court overruled the motion. Exceptions were taken, and the cause brought here by writ of error. Five errors are assigned as follows, to-wit: (1) That said district court erred in not admitting as evidence the original contracts between the said parties, copies of which are attached to plaintiffs' declaration as Exhibits A and B, which were offered in evidence on the part of the plaintiffs at the trial. (2) The court erred in instructing the jury to find for the defendant. (3) The court erred in sustaining the objection of the defendant to the introduction of said contracts in evidence by the plaintiffs. (4) The court erred in overruling plaintiffs' motion for a new trial. (5) The court erred in rendering judgment for the defendant.

The whole record thus presented resolves itself into a single question, *i. e.,* whether the court below erred in refusing to permit the two contracts sued on to be read in evidence on the trial. These agreements are alike in form, and executed by same persons. The beginning of each is as follows:

"This agreement, made this 30th day of May, 1882, by and between Lionel

D. Saxton, party of the first part, and the Texas, Santa Fe & Northern Railroad Company, party of the second part, witnesseth," etc.

They conclude and are signed as follows:

"In witness whereof, we have hereunto set our hands and seals, this 30th day of May, A. D. one thousand eight hundred and eighty-two.

[Signed]                    "L. D. SAXTON.          [Seal.]
                            "CHARLES H. IRVIN. [Seal.]

"Chief Engineer of Texas, Santa Fe & Northern Railroad Company, and as such its specially authorized agent to make this agreement.

"Signed, sealed, and delivered in the presence of JULIUS H. GERDES."

Three grounds of objection to the admission of the contracts were made, but whether sustained upon all or any particular one we cannot say, except from the propositions of law argued in the briefs of counsel here. These are: *First.* The contracts provide that the differences between the contracting parties, according to the terms of the contract so offered, were to be referred to and settled by the chief engineer of the defendant company. *Second.* The contracts laid in the declaration were with Browne and Saxton as partners, while the contracts offered in evidence are with Saxton alone. *Third.* The contracts offered are specialties, and the form of action is *assumpsit*, and that *assumpsit* will not lie upon a sealed instrument. There is nothing in the contracts, so far as I find, in the nature of an agreement to preclude plaintiffs from suing for a breach of the entire contract. It was doubtless the intention of the parties to refer matters of difference between them to the engineer as to the manner of performing conditions named in the contract, but not as to whether damages had resulted to plaintiffs by the refusal of the defendant to perform its part of the agreement. The plea in abatement was overruled, and the question of the joinder of the plaintiffs at that time was determined in favor of the plaintiffs, as defendant had pleaded in bar after abandoning its plea in abatement. Defendant in error had obtained full knowledge of the rights of Browne as a partner in the contracts, by means of his responses to the interrogatories filed to discover that fact before pleading the general issue. The statute requires suits to be brought in the name of the real parties in interest. Comp. Laws, §§ 1884, 1888. If he was a real party in interest, in fact he was a proper party to the suit, but prudence should have suggested to the pleader the propriety of framing the declaration in such manner as to disclose the interest of Browne in the written instrument, and thereby avoid the appearance of a variance between the declaration and the proof offered in support of it. We, however, deem this insufficient as a ground of objection under the pleadings at that stage of the proceeding.

The main question argued in the briefs and at the hearing was: Are the instruments declared upon specialties or simple contracts? If the contracts offered in evidence are the sealed covenants of the defendant corporation, and the declaration is upon them, *assumpsit* will not lie. 1 Chit. Pl. § 95; *Fresh* v. *Gibson*, 16 Pet. 332; *Young* v. *Preston*, 4 Cranch, 239. While the seals attached to the contracts are mere scroll, and apparently only the private seals of Charles H. Irvin, on the part of the company, and L. D. Saxton, yet it is contended on behalf of defendant in error that the contracts, having been executed by Irvin as engineer, in the name of the company, and the plaintiffs having elected to treat the agreements as corporate contracts, they are bound to admit them as the specialty obligations of the defendant company, because they are sealed in fact in a manner purporting to be the sealed engagements of the company, although not in the usual form or under the impress of the common seal of the defendant. It is further claimed that the seal of Irvin is the seal of the company for the purpose of this case, as the defendant corporation may alter its common seal, and adopt whatever form or device it sees proper. Our attention has been called in support of this view to an elaborately considered case in New Hampshire, where the court fully discussed the effect of private seals of officers when executing deeds on behalf of corporations. The facts in that case, as stated by the court, were sufficient to

show knowledge, on the part of the directors and stockholders of the note and mortgage executed by the president and treasurer on behalf of the corporation, and that the acts of the officers had been approved and ratified, not only by the directors, but by the whole corporate body. *Tenney* v. *Lumber Co.*, 43 N. H. 343.

Section 2664, Comp. Laws N. M., is cited as authority on behalf of the company to show that defendant may not only "make and use a common seal, but alter the same at pleasure," and that this statutory power is in harmony with the general rule declared in the cases cited. Section 2623 of our statute on the subject of railroad corporations declared that the corporation powers, business, and property of the corporations formed under this act must be exercised, conducted, controlled, and managed by a board of not less than five nor more than eleven directors. The same section, in an after-clause, provides that unless a quorum be present and acting, no business performed or act done shall be valid or binding as against the corporation. These sections, taken together, show that in order to alter the common seal of the company and adopt a new one, the governing body of directors alone could bind the corporation. No "act done," in the very language of the statute, would be binding upon the corporation, unless sanctioned by the board of directors. The solicitor of the company had no power to adopt the seal of Irvin and make it the seal of the corporation. The agents and officers of a corporation may, when authorized by the company, bind it to perform obligations; and if the seal of an agent or officer be adopted in any manner, as by notification after full knowledge of the act, or where the corporation has received the benefits or profits arising out of the contract, or by acts in any manner working an estoppel, the seal of the officer would be treated as the seal of the company, where the body of the instrument and its covenants or obligations were made for and in the name of the company, on its behalf, in such manner as to clearly indicate that it was not an individual, but a corporate engagement. Upon the face of the contracts offered in evidence the private seal of Irvin, the engineer, appears, and, there being nothing in the record to advise the court of a change made in the corporate seal of the company, or that any corporate recognition or adoption of the private seal of the corporation had taken place, we think the court should have admitted them in evidence as the simple or unsealed contracts of the defendant. We think the true rule on this subject is laid down by Ang. & A. Corp. in these words: "The corporate seal is the only organ by which a body politic can oblige itself by deed; and though its agents affix their private seals to a contract binding upon it, yet these not being seals as regards the corporation, it is in such case bound only by simple contract." Ang. & A. Corp. § 295. This text authority is fully supported by the highest courts of the country. *Bank* v. *Patterson*, 7 Cranch, 304; *Haight* v. *Sahler*, 30 Barb. 218; *Randall* v. *Van Vechten*, 19 Johns. 65; *Tippets* v. *Walker*, 4 Mass. 597; *Mitchell* v. *Land Co.*, 4 Fla. 200; *Bank* v. *Guttschlick*, 14 Pet. 19; *Whitford* v. *Laidler*, 94 N. Y. 145; *Fleckner* v. *Bank*, 8 Wheat. 357; *Asylum* v. *Johnson*, 43 Me. 184. Some confusion seems to have arisen in the court below in treating the private seal of the agent as an important, and, possibly, a vitally essential feature of the contract to determine whether the contract was the individual obligation of Irvin or the corporate undertaking of the company. The failure to seal the contract with the common seal of the company did not in any way impair Irvin's authority to make the contract he did. The seal was an immaterial addition to his signature, and may be disregarded. Having determined that the contracts rejected in evidence were the simple contract obligations of the company, it follows that *assumpsit* would lie, and therefore the other questions discussed need not be considered.

The judgment is reversed, and the cause remanded, with directions to grant a new trial, and for further proceedings.

We concur: BRINKER, J.; REEVES, J.