# HARRY J. JOHNSON *v.* LEE TOMA & COMPANY, LIMITED.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED APRIL 6, 1905.   DECIDED APRIL 25, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

CODE PLEADING, CONSTRUCTION OF—*common count—theory of case—surplusage.*

> Plaintiff's complaint averred his employment by defendant to obtain remission of duties assessed on three lots of goods imported by defendant from the Philippines; that defendant at the time of

the employment "promised and agreed to pay plaintiff for his services so much as the same should be reasonably worth according to the usual custom and standard for such services in similar cases prevailing at Honolulu, San Francisco and New York;" plaintiff's performance "to defendant's benefit and advantage in the sum of $17,871.08, the aggregate amount of said assessment;" that the reasonable value of the services "according to the standard of compensation in similar cases prevailing in Honolulu, Washington and New York was one-third of the amount saved to the importer," being $5,957.02, in which sum the defendant is indebted to plaintiff.

At the opening of plaintiff's case, in answer to the defendant's inquiry whether he claimed that "an express contract was entered into under the terms of which one-half was to be paid to the plaintiff," plaintiff said, "We are sueing on a quantum meruit." To the defendant's further inquiry, "And counsel states that there was an express contract entered into?" answer was made, "That there was an express contract entered into at that time." Held: The complaint evidently counts upon a special agreement of hiring for an agreed price, but applying the rule of favorable construction of Code pleadings and the rule that the theory of the pleading on which the case was tried will not be changed by the appellate court, if it may fairly be so construed, this is treated as a cause of action indebitatus assumpsit or quantum meruit, and the averment of the defendant's agreement to pay is taken not as an express stipulation for price, but as averring the obligation implied by law to pay the plaintiff what he reasonably deserved for his service, the words "according to the usual custom," etc., being surplusage.

ID.,—*evidence—express agreement in quantum meruit—liability of defendant on agreement made prior to its incorporation—novation of contract—value of service—unreasonable custom.*

The evidence showed an express agreement of hiring made with a third person in respect of the first and second lots of merchandise. The defendant was not incorporated by organization until after the importation of the second lot and dealt with the plaintiff concerning duties upon the third lot only. The third person or the firm of L. T. & Co. of which he was manager, sold all the merchandise to the defendant L. T. & Co., Ltd., the remitted duties and the goods when released from bond were delivered to it, and its manager told plaintiff he would be paid, but he charged too much. Held: A special agreement of hiring for what the plaintiff reasonably deserved does not preclude an action on the com-

mon count for quantum meruit after performance of the service.

Upon the theory of novation the corporation, having taken over the assets and business of the incorporated firm of L. T. & Co., the facts justify the inference that it assumed the obligations of the firm in respect of the service performed concerning all of the duties, the plaintiff consenting thereto by bringing this action.

Plaintiff's evidence of his talk with L. T. (of defendant corporation) about reshipping cigars was properly admitted; and evidence of C. C. (president of defendant corporation) of dealing with plaintiff concerning a protest made prior to defendant's incorporation was properly admitted, but not so of plaintiff's evidence that in his opinion Congress would shortly enact a law (as it did) to authorize such duties, and that the law if enacted would include these goods held in bond, and therefore it was important promptly on hearing of a decision of the United States Supreme Court in a case pending when plaintiff undertook the service to get an order to the collector to release the goods. This evidence probably enhanced the value of the plaintiff's services in the opinion of the jury and was inadmissible.

The verdict (of $3,500) was unsupported by evidence. The plaintiff's evidence of a custom in Honolulu and San Francisco to pay one-half of the amount saved to the importer was not evidence of what the plaintiff deserved for his services, since such a custom, if it exists and applies in all cases regardless of the nature of the services, is unreasonable. Plaintiff when he undertook the service knew that all he could do was to file protests and that a case was then pending in the United States Supreme Court, the decision of which would determine the legality of all those duties.

OPINION OF THE COURT BY HARTWELL, J.

A material question raised by the exceptions in this case is whether the action was for breach of an implied or an express agreement. At the opening of the plaintiff's case to the jury the plaintiff in answer to the defendant's inquiry whether he claimed that "an express contract was entered into under the terms of which one-half was to be paid to the plaintiff" said, "We are sueing on a quantum meruit." To the defendant's further inquiry, "And counsel states that there was an express contract entered into?" answer was made, "That there was an

express contract entered into at that time." The substance of the averments in the plaintiff's complaint is that the defendant employed the plaintiff at Honolulu between May 13, 1901, and March 23, 1903, as a claim agent to represent its interests, prepare protests, etc., in its applications between those dates for abrogation of assessments and remission of duties to which under the collector's rulings the defendant had become liable on merchandise imported by it into Honolulu being (1) 3,100 pounds Manila tobacco wrapper imported May 13, on which the collector assessed $5,753.50, of which the defendant paid $1,-864; (2) 1,016 11-16 pounds of cigars imported August 27, on which the collector assessed $4,780.38, and (3) 100,000 cigars imported October 31, 1901, on which the collector assessed $6,357.22; "that defendant at the time and times of said employments promised and *agreed* to pay plaintiff for his services, so much as the same should be reasonably worth, according to the usual custom and standard for such services in similar cases prevailing at Honolulu and San Francisco and New York;" that plaintiff accepted said employment and performed the same by filing in the name of Hind, Rolph & Co. protests against the classification, rulings and assessments of the collector and also by preparing and forwarding to the secretary of the treasury briefs and arguments in support of his contention that the duties had been illegally imposed; that in consequence of the plaintiff's efforts, knowledge and skill in preparing and filing said protests and presenting said cases to the secretary that official, on or about December 4, 1901, decided that said merchandise was not subject to duties, ordered a return to defendant of the $1,864, directed the release of said merchandise to defendant, and thereupon that the collector in compliance with said decision and direction repaid to defendant the said sum of $1,864 and returned said merchandise "to defendant's benefit and advantage in the sum of $17,871.08, the aggregate amount of said assessments; that the reasonable value of plaintiff's services as hereinbefore set forth, according to the standard of compensation in similar cases prevailing in Honolulu, Washington and

New York was and is one-third of the amount saved to the importer; that one-third of the amount saved to the defendant by plaintiff was and is the sum of $5,957.02, in which sum defendant in 1903 became and still is justly indebted to plaintiff."

By decisions in many states Code pleadings, such as this, permit common counts in actions on contracts, while in other states common counts are regarded as inapplicable, upon the ground that they do not state facts, but conclusions of law. For citations on this question see 4 Ency. Pl. & Pr. 611, n. 1; but we are not aware that it has ever been held that in Code pleading material facts may not be pleaded as well by express averment as by averment of other facts from which they are necessarily inferred. In *Sullivan v. Mining Co.,* 109 U. S. 550, the court, after remarking that "by the elemental rules of pleading facts may be pleaded according to their legal effect without setting forth the particulars that lead to it; and necessary circumstances implied by law need not be expressed in the plea," held: "We find nothing in the statutes of Colorado which changes the rules of the common law in this respect."

The complaint before us evidently counts upon a special agreement of hiring for an agreed price, but it does not follow that the plaintiff by defendant's acquiescence could not properly have treated it as he did do, as a quantum meruit. When a contract "has been fully executed according to its terms, and nothing remains to be done but the payment of the price, he may sue on the contract, or indebitatus assumpsit, and rely upon the common counts." *Dermott v. Jones,* 2 Wallace 9. "Indebitatus assumpsit will lie to recover the stipulated price due on a special contract, not under seal, where the contract has been completely executed." *Bank v. Patterson,* 7 Cranch 301. "Although a party may perform services under a special agreement, when the contract has been completed on one side, and nothing remains to be done but the payment of money, the party may maintain an action under the common counts, and introduce, in support of the complaint, evidence of a special

contract of employment, as tending to show the character of the services rendered, the length of time, and also the value of the services." *Woodrow v. Hawving,* 105 Ala. 240, 16 S. R. 720.

In *Foltz v. Cogswell,* 86 Cal. 542, the complaint alleged that the defendant promised to pay the plaintiff for her professional services $5,000, the performance of certain services and that they "were reasonably worth $5,000." To the appellant's contention that "the claim of plaintiff is based upon an express contract for the sum demanded for her services, and that it was error to admit evidence in support of a demand upon a quantum meruit," the court said: "The complaint, it is true, states in one place that she was to be fully paid for her services, to wit, $5,000; but, reading the complaint as a whole, the substance of which we have set out above, we think it clearly shows that the action is upon an implied contract for the reasonable value of her services, alleged to be reasonably worth the sum demanded, and not upon an express contract for that sum."

Applying to the complaint the rule of favorable construction usually given to Code pleadings, and also the rule that the theory of the pleading on which the case was tried will not be changed by the appellate court, if it may fairly be so construed, we treat this pleading as a claim that the plaintiff, having engaged the defendant to perform service, which was performed accordingly, was under the legal obligation to pay the plaintiff what he reasonably deserved therefor; in other words, as a cause of action indebitatus assumpsit or quantum meruit. This construction requires that the averment that the defendant agreed to pay the plaintiff as much as his services should be reasonably worth according to the usual custom, etc., be taken not as an express stipulation for the price, but as stating nothing more than the obligation which the law placed upon the employer, the words "according to the usual custom," etc., being treated as surplusage.

We will now consider the defendant's exception to the denial of its motion at the close of the plaintiff's case for a directed verdict. The motion was based in substance on the grounds

that (1) There was no evidence to hold the defendant liable. (2) The action was brought on a contract made prior to the defendant's incorporation. (3) and (4) The proof showed an express contract of hiring, while the plaintiff claimed on a quantum meruit. (5) There was no proof of the reasonable value of a broker's services according to the custom and standard established in Honolulu, San Francisco and New York.

According to the foregoing views the third, fourth and fifth grounds of the motion for a directed verdict, referring merely to an express agreement, cannot be sustained. The first and second grounds of the motion not only involve the question whether the averment of the plaintiff's employment by the defendant and his performance of the service pursuant thereto could be supported by evidence from which a request to perform could be inferred, but whether there was evidence on which a novation of the plaintiff's contract, whether express or implied, could be inferred. Undoubtedly it is not enough to hold one liable to pay for service that he was benefited thereby, although "if one voluntarily accepts services rendered for his benefit, when he has the option whether to accept or reject them, a promise to pay for them may sometimes be inferred." *O'Connor v. Hurley,* 147 Mass. 145. When one performs services for another, with the latter's knowledge and consent or acquiescence, a request by the latter to perform the service and a promise of compensation for the same may be implied.

As to the plaintiff's services concerning the third importation of October 31, 1901, there was evidence on which a finding could have been made that the defendant requested and promised to pay for it. This evidence appears in the protest against duties on the goods imported October 31, prepared by the plaintiff and signed "Lee Toma & Co., Ltd., per S., Chang Chow, president," and in the evidence that after the goods were released Chang Chow told the plaintiff that the defendant would pay for his service, although he said he thought the plaintiff charged too much. This evidence taken in connection with the fact that upon the incorporation of the defendant it took over

the assets and business of the incorporated firm of Lee Toma & Co., including the $1,864 remitted duties and the released merchandise, justifies the inference that it assumed the obligations of the firm in respect of the service performed concerning the duties, and that Chang Chow, the president of the defendant corporation, recognized this liability in talking with the plaintiff about paying for his services. In *Marconi's Tel. Co. v. Cross, ante,* 393, this court held that upon the facts in that case there was a novation of the contract made between the parties whereby a corporation formed by the defendant had adopted the defendant's contract, and the plaintiff had impliedly released the defendant and assented to the adoption of the contract by the corporation. We held in that case that "the contract was made with the mutual intention that it would be assigned to a corporation to be formed for the purpose of taking it, and that the assignment was made accordingly and assented to by the subsequent conduct of the plaintiff, with the implied agreement that the assignment should operate as a release of the defendant from his obligation. Or the evidence would have justified a finding of a 'waiver of the original contract by the mutual understanding of the parties.'" In this case we cannot say that the engagement of the plaintiff was made with the intention which appeared in the case cited; but adoption by the defendant of Lee Toma & Company's liability may be inferred from the conduct of the parties, the plaintiff by bringing this action assenting thereto. The exception to the refusal to direct a verdict is therefore not sustained.

The exception to the ruling out of the evidence of the date when the defendant corporation was organized is sustained, but the exceptions to the plaintiff's evidence of his talk with Lee Toma about reshipping the cigars and to Chang Chow's evidence, that Lee Toma & Co. dealt with the plaintiff concerning the protest which was dated prior to the filing of defendant's articles of association, are not sustained. But there was no evidence on which the verdict for $3,500 can be sustained, for we do not regard the plaintiff's testimony of a custom in Honolulu

and San Francisco to pay one-half of the amount saved to the importer as evidence of what the plaintiff deserved for his services, since such a custom, if it exists and applies in all cases regardless of the nature of the services rendered, is unreasonable.   The plaintiff testified that he made the protests against duties, claiming that the merchandise, coming from the Philippine Islands, was not subject to duties, and knowing perfectly well that a case was then pending in the United States Supreme Court, the decision of which would determine the validity of all such duties.   There was nothing to be done except to prepare and file protests, and the plaintiff did nothing else except that on hearing in San Francisco of the decision he telegraphed in the name of Hind, Rolph & Co. to the department in Washington requesting a telegraphic order to the collector in Honolulu to deliver the goods, which was done.   The plaintiff's evidence that in his opinion Congress would shortly enact a law (as it did do) to authorize such duties and that the law, if enacted, would include these goods held in bond, and therefore it was important to act promptly in getting an order to the collector to release the goods, was allowed to go before the jury under exception from the defendant and probably in the opinion of the jury enhanced the value of the plaintiff's service. This evidence was inadmissible and the exception to its admission is sustained.   The exception to the verdict as contrary to evidence, in the meaning that it was unsupported by evidence, is sustained.

Therefore, as well as on the ground of the exceptions sustained as above, the verdict is set aside and a new trial is ordered.   The case is remanded for further proceedings consistent herewith.

*Lorrin Andrews* and *W. S. Fleming* for plaintiff.

*R. W. Breckons* and *A. S. Humphreys* for defendant.